## NEWMAN v. THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

**Railroads:** DEATH OF BRAKEMAN: CONTRIBUTORY NEGLIGENCE: PROXIMATE CAUSE. The rear brakeman on one of defendant's freight trains was charged by the conductor with the duty of setting out two cars and making other changes in the train at a certain station, and with the direction of all movements of the engine necessary to accomplishing that work. He was perfectly familiar with the depot grounds, switches and sidetracks at the station in question. In setting out the two cars, he left them in such a position on the sidetrack that there was only room for a car on the main track to pass them without collision, and so that they were wrongfully left standing upon the crossing of a city street. In the further movement of cars under the brakeman's direction, two cars were kicked back on the main track, past the two cars which had so been set out, with such speed as to indicate negligence on the part of the engineer. The conductor, seeing these cars moving at an undue rate of speed, directed the brakeman to catch them. In obedience to this order, he began climbing the ladder upon the side of one of the moving cars, and, while intent upon so doing, the moving cars passed the cars which had been set out. and, because there was not room for his body between the moving and the standing cars, he was caught between them, and so injured that he died. *Held* that he was guilty of negligence in leaving the cars on the sidetrack so near to the main track,—there being no reason why he might not have had them moved further along the track, and left at a proper distance from the main track, and off the street crossing; also, that, though the engineer was guilty of negligence in kicking the other cars back with undue speed, the brakeman's own negligence contributed to his death, and that there could be no recovery therefor.

*Appeal from Linn District Court.*—HON. C. F. COUCH, Judge.

FILED, JUNE 2, 1890.

THIS is an action to recover damages for the death of William H. Rood, who, it is alleged, was killed by being crushed between two cars on the defendant's railroad, at Cedar Rapids, by reason of the negligence of

the defendant, and the negligence of the coemployes of said road. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*Mills & Keeler,* for appellant.

*Rickel & Crocker, Ward & Harman* and *F. C. Hormel,* for appellee.

ROTHROCK, C. J.—I. It is conceded that William H. Rood was killed while in the employ of the defendant, and that he came to his death by being crushed between two box freight cars on the defendant's railroad. At the time of the accident which resulted in his death, he was climbing the ladder on the side of a moving car, and, while so ascending the side of the moving car, it passed another car, standing on an adjacent track, so close as not to permit his body to pass safely between said cars, and he was caught and rolled along between them, and injured so that he died in a few minutes. The deceased was an experienced brakeman, and was, at the time of his death, and had been for several months, in the employ of the defendant, on a freight train running from Marion, in this state, through the city of Cedar Rapids, to the city of Ottumwa. He was what is known as the "rear brakeman," and it was part of his duty to do the immediate work in connection with the switching of cars, made necessary by the business of the company, at the intermediate stations on the road. We do not mean that he was required to do all the manual labor connected therewith; but he had the immediate control of the work. When a car or cars were to be taken out of the train, it was his duty to see that they were properly set on the sidetracks, and that the train was properly cut in two parts, and that the proper movements of the engine and cars were made to execute the order. He was required to give the requisite signals to the engineer and fireman to accomplish the work in the proper manner,

and it was his duty to direct the men on the engine to stop and move the same so as to place the cars in the proper position. He was perfectly familiar with the depot grounds, switches and sidetracks of the defendant at Cedar Rapids. Before leaving Marion, E. W. Briggs, who was conductor of the train, directed Rood as to the work to be done at Cedar Rapids. He told him to cut off four cars; throw two on the sidetrack, two on the main track; take the engine and go on the siding, and get three or four stock cars. It was then dark, and, before arriving at Cedar Rapids, Rood went forward, to be in position to execute his orders When the train stopped, the four cars were cut off from the train, and the engine pulled them south over the switch. Rood was standing on the top of the last car, and when it had passed the switch he gave the signal with his lantern to stop, descended from the car, threw the switch onto the sidetrack, and signaled the engineer to back up. The engine and four cars backed in on the sidetrack until they struck against some cars standing thereon, when the signal was given to stop. The railroad tracks at this point are curved, and Rood gave the signals from the inside of the curve. He cut off the two cars, leaving them upon the sidetrack, and standing against the cars to which they were backed up. After cutting off the two cars, he walked across the sidetrack, past the south end of the last car, stopped at the edge of that car, and held up his lantern, and looked at the end of the car, and then followed the engine and the other cars down to the same switch he had before turned, and moved it from the sidetrack back to the main-line track, and signaled to the fireman and engineer, and the engine and two cars were backed quite rapidly; and, while thus backing on the main line, the two cars were detached from the engine by the head brakeman, the engine was stopped, and the two cars were thus "kicked" down along the main line. About this time the conductor came up from the rear of the train, and saw the cars moving at the rate of six or

seven miles an hour, with no one on them to control their speed. He saw Rood near the cars, and, without knowing who he was, ordered him to catch the cars. Rood commenced to ascend the ladder on the side of one of the cars, and was caught between that and the car which had been placed on the sidetrack, and killed. It is apparent from the foregoing facts that, if Rood had not left the cars on the sidetrack so near the main line, the accident would not have happened. By removing them a very short distance further from the switch, there would have been no damage whatever.

The foregoing facts are established without conflict in the evidence. It is true that counsel for appellee claim that the jury were warranted in finding from the testimony of the conductor that he personally directed Rood to leave the car where it stood on the switch. The claim is founded upon an alleged contradictory statement made by the conductor in two depositions which were taken by the parties. We have to say that a careful examination of the whole record shows that there was no contradictory evidence given by the conductor on this question. It is true that the conductor was asked this question: "Under whose personal direction and supervision were the two cars set out upon the sidetrack, and left thereon, at the time of the accident?" The answer was in these words: "Rood's supervision, and my direction." The direction spoken of was given at Marion. There is no evidence that the conductor knew that the car was in an unsafe or dangerous position until it was too late to prevent the accident, and the jury so found; and there is no evidence that would warrant a jury or court in finding that the conductor was negligent in ordering Rood to take control of the moving cars.

The record is voluminous. Numerous acts of negligence are charged, but, when the evidence is considered, there is only one charge of negligence which the court would be authorized to submit to a jury. All the others are either abandoned by the appellee, or are

so manifestly without support in the evidence as to
demand no consideration.    We will proceed to examine
the charge of negligence upon which there is a fair
conflict in the evidence.

It is claimed that the engineer and fireman disre-
garded the signals given by Rood, and disobeyed the
same, and, instead of backing the last two cars down
the main track, "kicked" them loose from the engine
at such a rate of speed that Rood was required to make
the attempt to stop them by climbing up the side of one
of them.    There is evidence from which it might fairly
be found that Rood gave a signal to back the cars with
the engine attached, and not kick them back.    It is
true that the engineer and fireman testified that they
obeyed the signal as given.    But there was a fair con-
flict on this question.    As we read the record, there was
absolutely no question for the jury to determine except
that arising on the alleged act of negligence above
mentioned.    The appellant contended that the negli-
gence of Rood in leaving the cars on the switch in such
position as that another car, passing on the main track,
would leave a space of but a few inches, contributed to
his injury and death, and that plaintiff cannot recover
by reason of that act of negligence on the part of Rood.
And here we may say there is absolutely no conflict in
the evidence as to the negligence of Rood.    As we
have said, he was perfectly familiar with the switches
and tracks in the yards.    He left the car on the side-
track in such a position that it, with other cars north of
it, completely blocked and closed up Fifth street in
Cedar Rapids.    There were plank highway or street
crossings sixteen feet wide over the railroad tracks, and
near the center of the street, and he had been previously
warned not to leave cars standing south of this crossing
on that sidetrack.    It is manifest that it would be a
palpable act of negligence, even if he had received no
explicit instructions on the subject.    It was negligent,
because he knew that if a car stood on the switch over
the crossing, with its south end from twenty to

twenty-four feet south of the crossing, as he left it, the car would be too close to the main track for safety ; and it was wrongful and negligent, because it completely blocked the street against travel. It required no skill in operating a railroad to know that the act was wrongful.

It is claimed by counsel for appellee that the act of leaving the car south of the crossing was not wrongful nor negligent, because the two cars which were placed on the sidetrack were backed up against other cars on the track, and could not be backed further. But this thought finds no support in the evidence. After the accident, the same engine and crew backed all of these cars clear of the crossing. It is true it required some of the brakes on the cars to be loosened, but that was no reason why the street crossing should not be kept clear, and the cars placed in proper position.

The jury returned a general verdict for the plaintiff for the sum of twenty-five hundred dollars. The deceased was a young man, aged twenty-seven years, and had been engaged in railroading for four years, at an average salary of fifty dollars a month. In addition to the general verdict, the jury returned answers to special interrogatories which were submitted to them by the court, upon the request of the defendant. The following is a copy of the interrogations and answers:

"*Q*. 1. Were the two cars placed and left upon the sidetrack that night at a sufficient and safe distance from the main track? *A*. For all ordinary purposes.

"*Q*. 2. Did the conductor direct William H. Rood, the rear brakeman, to do the switching in the Cedar Rapids yards that night? *A*. Yes.

"*Q*. 3. Was Wm. H. Rood in immediate personal charge of the switching done that night, prior to the accident? *A*. Yes ; under orders of conductor.

"*Q*. 4. Did Wm. H. Rood have personal charge and control of the placing and leaving of the two cars upon the sidetrack that night? *A*. (by jury). He did, by conductor's orders.

"*Q.* 5.　Did Wm. H. Rood have knowledge of the position in which the two cars were placed and left upon the sidetrack that night? *A.* ( by jury ).　To a certain extent.

"*Q.* 6.　Was it Rood's personal duty to see that the two cars were placed and left upon the sidetrack at a sufficient and safe distance from the main track? *A.* ( by jury ).　Yes ; by the order of the conductor.

"*Q.* 7.　Was Wm. H. Rood an experienced brakeman, and familiar with the location and situation of defendant's main track and sidetrack number 1 that night? *A.* ( by jury ).　Yes.

"*Q.* 8.　Would Wm. H. Rood have received his injuries if he had placed and left the two cars upon the sidetrack at a sufficient and safe distance from the main track that night? *A.* ( by jury ).　No.

"*Q.* 9.　If the two cars had not been placed and left upon the sidetrack where they were actually left, would Rood have been injured by them? *A.* ( by jury ).　No.

"*Q.* 10.　Would Wm. H. Rood have been injured if the two cars had been placed and left at a sufficient and safe distance from the main track? *A.* ( by jury ).　He would not.

"*Q.* 11.　At the time the conductor ordered Rood to catch the two cars coming down the main track, did he then know that the other two cars were placed and left upon the sidetrack too near the main track for safety? *A.* ( by jury ).　No.

"I. H. ANDREW, Foreman."

Counsel for the defendant moved the court to render a judgment for the defendant on these special findings, notwithstanding the general verdict. The motion was overruled. The answers to these special findings must be construed in the light of the evidence. All the answers which are qualified "by the conductor's orders," and "orders of conductor," and "by the order of the conductor," must be understood as the orders given at Marion. In this sense, the answers are

Newman v. The Chicago, M. & St. P. Ry. Co,

supported by the evidence, and there is not one word of evidence tending to show that the conductor gave any orders afterwards; and the answer to the eleventh interrogatory shows that the conductor did not know that the two cars on the sidetrack were in a dangerous position when he ordered Rood to catch the two cars coming down the main track. The substance of these answers are: *First*, that the cars were at a safe distance for all ordinary purposes, by which it is to be understood that another car, in passing on the main track, would not collide with them; *second*, that Rood voluntarily placed the cars on the sidetrack, and that the conductor was not negligent in ordering Rood to catch the cars on main track. There is no escape from the conclusion that, under these special findings, Rood was negligent, and that if it had not been for his negligence his life would not have been lost.

But it is claimed that the jury were warranted in finding that, notwithstanding he was negligent, such negligence did not contribute proximately to his death. It is claimed that the efficient act of negligence was that of the engineer in kicking the cars back on the main line, contrary to the signals given by Rood; and the learned district judge was of opinion that the jury might so find, and he instructed the jury on the question of proximate cause as follows: "20. In determining whether or not an act is the proximate cause of an injury, the legal test is, was the injury of such a character as might reasonably have been foreseen or expected as the natural result of the act complained of? A party, in law, is not chargeable with results which do not naturally and reasonably follow as the consequence of his conduct."

It has become a familiar rule in the jurisprudence of this and other states that, when the party injured was negligent, the party charged with liability for the injury cannot escape the consequences of his negligent act, when the negligence of the plaintiff was discovered by the defendant in time to have averted the injury by

the exercise of reasonable care. *Morris v. Railway Co.*, 45 Iowa, 32 ; *McKean v. Railway Co.*, 55 Iowa, 194, and other cases. But that rule has no application in this case, because there is no evidence that anyone in the defendant's service ex cept Rood knew, until it was too late to avert the injury, that the two cars on the sidetrack were left standing at an improper place. The ultimate question to be determined is, was there any ground for holding that the negligence of Rood did not contribute to his injury so as to defeat a recovery ? The definition of what are proximate causes, given in the instruction above quoted, is applicable where one act of negligence follows another in point of time, and the first act is so remotely connected with the injury as that it might be said that it was no part of the efficient cause of the injury. See *Handelun v. Railway Co.*, 72 Iowa, 709 ; *Crowley v. Railway Co.*, 65 Iowa, 658 ; *Railway Co. v. Kellogg*, 94 U. S. 474 ; and *Scott v. Hunter*, 46 Pa. St. 192.

But the act of Rood in placing the cars on the sidetrack, and allowing them to remain there, was a continuing act of negligence. The cars remained there, and were a standing and continuing menace to the safety of persons engaged in moving the cars on the other track. If Rood had deliberately planted a post in the ground instead of placing the cars on the track where they were placed, and he had come in contact with the post, it would be a strange doctrine to hold that, because he planted the post before he was injured, his act did not have any proximate connection with the injury ; and his act in placing the cars, though not a malicious one, was just as closely connected with his injury as though he had erected a permanent structure near the track, and by contact therewith was injured. Much has been written upon the subject of proximate and remote causes, as applied to injuries on the ground of negligence. The books are full of refined reasoning and distinctions as to conditions and causes and causal connections, and the like ; but, after all, courts and juries

should determine these questions upon common-sense principles, within the comprehension of the ordinary triers of questions of fact. If the act of Rood was not contributory negligence, a passenger riding upon the platform of a car, in direct violation of his rights as a passenger, might well claim that the carrier was liable for an injury to him because, after he went on the platform, the engineer negligently caused a collision ·by which the platform was crushed. He might claim that his negligence was prior in point of time, and that he did not apprehend that the engineer would be negligent. Such a proposition would not command the approval of anyone, and yet the act was a continuing act of negligence, the same as placing the car in a dangerous position on the track by Rood. In our opinion, the answers to the special interrogatories in this case required a judgment to be entered for the defendant.

II. An appeal was taken by the plaintiff, and errors are assigned upon the giving of an instruction to the jury which is claimed to be erroneous, and upon certain rulings upon the admission of evidence. We need not discuss nor set out the grounds upon which it is claimed the court erred. It is enough to say that the matters complained of could not have had any influence in the way of eliciting any other answers to the special interrogatories than those given by the jury. We put the reversal of the cause squarely on the ground that the defendant was entitled to judgment on the special findings, and the cause is remanded to the court below for the purpose of entering such judgment.

REVERSED.