George W. Ferguson v. The Chicago, Milwaukee & St. Paul Railway Company, Appellant.

**Negligence:** DUTY OF CREW. Employes in charge of an engine have the right to assume that a switchman who was attempting to mount on the front foot-board for the purpose of making a switch, has succeeded in doing so, where he is hidden from their view by the boiler; and are not required to stop the engine to ascertain whether he has done so.

CONTRIBUTORY NEGLIGENCE. A switchman who voluntarily steps into the middle of a track in front of an engine which he intends to board, instead of getting on at the side, which he can do with safety, is guilty of such contributory negligence as will prevent a recovery for an injury caused by his slipping and falling in front of the engine.

**Hearing Outcry:** JURY QUESTION. Plaintiff, a switchman on defendant's railroad, fell while attempting to climb upon the foot-board of a slowly moving switch engine, but caught hold of the foot-board by which he was dragged one hundred and sixty-seven feet, and his foot was crushed. During this time, he continually cried out for the engineer to stop. A person on the foot-board near the center, though standing, would be shut off from the view of those on the engine. The bell was ringing, and there were four persons on the engine, all of whom testified that they heard no outcry, but stopped the train at once, on being signaled by a bystander. *Held,* the fact that plaintiff's outcry was heard by persons standing at a distance from the engine, would not justify holding that it was heard by those on the engine, and that there was no evidence of negligence on the part of any of the employes, which would render the defendant liable for the injury.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WENDESDAY, JANUARY 27, 1897.

ACTION at law to recover damages for personal injuries sustained by plaintiff in being run over by a

switch engine in defendant's yards, in the city of Sioux City. Trial to a jury. Verdict and judgment for the plaintiff, and the defendant appeals.—*Reversed.*

*H. H. Field* and *Taylor, Shull & Farnsworth* for appellant.

*Argo, McDuffie & Argo* for appellee.

Deemer, J.—At the time the plaintiff received his injuries, which was on December 21, 1892, he was in the employ of the defendant as a switchman, in its yards at Sioux City, Iowa. He was thirty-two years of age, and had been engaged in railroading, in the capacity of brakeman, conductor, and switchman, for eight or nine years. He had been employed in switching for about two years prior to the accident, and for the defendant, about nineteen months prior thereto. The defendant's yards extend in an easterly and westerly direction through the entire city of Sioux City, and were known as the upper and lower yards. At the time plaintiff received his injury, he was working in the upper yards, which are in the vicinity of the passenger depot of the railway company. At the time of the accident the company was using an ordinary road engine for switching purposes. It had, however, taken the pilot off, and had placed handrails and footboards at the forward and rear ends of the engine. A few minutes before 10 o'clock A. M. of the day in question, the switch-engine crew received orders to go west on defendant's main line of road, which runs into Sioux City from South Dakota, to help a freight train into the city. A passenger train was due from the west, however, at about 10 o'clock, and the switch engine and its crew were compelled to await its arrival before proceeding onto the main

track.   During the interval, the switch engine stood on what is known as the "Joint Track," north and opposite of the passenger depot, and east of what is called "Douglass Street."   The engineer and fireman were on the switch engine, and plaintiff and a fellow switchman, named Rossiter, were loitering around the express office, at the foot of Douglass street, all awaiting the arrival of the passenger train.   The passenger train came in on the main line track, which is immediately south of the joint track, and stopped just east of the Douglass street crossing.   Thereupon the switch engine started to go westerly on the joint track, through the switches, and out on the main line.   As the engine started, the bell was sounded, and it continued to ring until after the accident occurred.   Plaintiff, whose duty it was to turn the switches so that the engine might pass onto the main track, started from the express office in a northwesterly direction, and ran towards the side-track on which the switch engine was moving.   He stepped over between the rails of the track on which the switch engine was running, some thirty or forty feet from where it started, and attempted to jump onto the front foot-board.   In this he did not succeed, but slipped and fell on the track, and the foot-board of the engine passed over him.   As it passed over him, plaintiff caught the foot-board, and was dragged for more than one hundred feet, when his right foot was caught by one of the wheels, and so injured that amputation was necessary.   At the time plaintiff received his injuries, the engine was running at a speed of from four to six miles an hour.   Plaintiff claims that as soon as he fell he commenced to call out in a loud voice, but that the engine was not stopped until after he received his injuries.   Three charges of negligence are made in the petition: *First.* In permitting the foot-board of the engine to become

covered with ice and snow. *Second.* Failure on the part of the persons operating the switch engine to keep a proper watch and lookout for plaintiff, and in not listening for his signals, or stopping the engine after he had signaled to have the same stopped. *Third.* "Using an engine not properly constructed, and not intended for switching, for the reason that the boiler shut off the view of the engineer of persons on the foot-board of said engine; that the front of the boiler projected over the foot-board; that the wheels of the engine were placed close behind the foot-board, and the engine was not provided with a sufficient railing to enable plaintiff to get upon the foot-board, or to ride thereon, with safety. It was also alleged that after the plaintiff had fallen from the foot-board, he was carelessly and negligently pushed along the track in front of the engine; that during all the time he was so being pushed, he cried out, and did everything in his power to attract the attention of the persons in charge of the engine, but they failed and refused to stop said engine, by reason whereof he was run over and injured." The trial court, in its instructions to the jury, eliminated all charges of negligence with reference to the construction and condition of the engine and foot-board, and submitted the case solely upon the issue of negligence of persons in charge of the engine, in failing to keep a proper lookout, or in failing to hear the plaintiff's outcries, or to stop the engine after he had fallen upon the track. At the close of the evidence, defendant moved for a verdict in its favor, for the reasons:—*First*, that no negligence on the part of the defendant or its employes had been shown; and, *second*, that there was such contributory negligence on the part of the plaintiff as would defeat a recovery. This motion was overruled, and defendant then asked instructions to the effect that under the facts disclosed

by the evidence, there was no negligence, and plaintiff could not recover.   These  instructions  were  refused, and exceptions taken.

This appeal presents but two questions, and these relate to the sufficiency of the evidence.   Appellant insists that the evidence is insufficient to show negligence of the persons in charge of the engine, either in failing to keep a proper lookout, or in not hearing plaintiff's outcries, or in not stopping the engine after he had fallen upon the track.   And it further insists that plaintiff was guilty of such contributory negligence as bars him of recovery.   Appellee claims, in argument, that the defendant's employes were guilty of negligence in not seeing that plaintiff had fallen upon the track in front of the engine, and in not stopping the train in time to have prevented plaintiff from being injured.

The undisputed evidence is that the plaintiff was pushed along the track a distance of one hundred and sixty-seven feet before he was injured, and there is testimony to the effect that, from the time he fell upon the track until the wheel passed over his foot, he called out continuously, and as loud as he could, to the engineer and fireman to stop the engine.   But there is no direct evidence that he was heard by these employes until too late to avert the injury.   Appellee says that the engineer and fireman heard his cries, or that if they did not, they were negligent in not hearing them.   The evidence shows that it was a cold morning, with the wind blowing quite strong from the north.   The curtains were down on the gangway of the cab, on both sides; the bell of the engine was ringing; the passenger train had just arrived; and there was more or less noise there from the wagons and vehicles, and other noises incident to

the arrival and departure of trains. A witness who was on his way to the freight house, and who was about one hundred and sixty feet from plaintiff when he was injured, heard his outcries, and says it was a general outcry from the first, that he distinctly heard it, and that it attracted his attention. Another witness, who was a little distance west of the express office, at the foot of Douglass street, saw Ferguson as he passed him, going to the engine; saw him go to the track that the moving engine was on, and watched him as he stood there, until the engine came up and he attempted to get onto the footboard; saw him slip and fall, and, to quote his own words: "As soon as he slipped I gave the signal to stop. There was some wind blowing. I succeeded in attracting the attention of the fireman. As soon as they got my signals they stopped pretty quick. The bell of the engine was ringing at the time. There was more or less noise around there from wagons, etc. I kept giving the signal, and hollered several times, until I got their attention; hollered loud, and made the ordinary signal for stopping. I was on the fireman's side of the engine, about twenty-five feet from the track. They, apparently, did not hear me. As soon as I attracted their attention they stopped. I did not hear Ferguson call but once. I heard him holler once when he first fell." At the time the accident occurred, two persons were in the cab of the engine besides the fireman and engineer. One of these was the fireman of the switching crew, and the other was the general yard master. No question is made but that these men were properly there, nor is there any serious claim that they in any manner interfered with the fireman or the engineer in the performance of their duties. The engineer did not see plaintiff until after the engine was stopped, and it is doubtful, from the evidence, if he could have seen him at any time. The

yard master saw Ferguson as he was going to the
front end to get on, but as he went onto the track, he
passed out of sight of those in the engine, because the
front end of the boiler interfered with the view.   The
fireman knew nothing of any mishap until he saw the
witness, who was at the express office, making an
outcry and giving signals, and he immediately gave
the engineer a signal to stop, which was done as soon
as possible after the fireman had given the word.
He says that he supposed that the plaintiff was
on the front end of the engine, and that he did not
know what the trouble was until after the engine
stopped.   The switching-crew foreman did not know
that anything was wrong until he heard some one
"hollering" outside.   This outcry he heard but once,
and he immediately jumped off the engine and ran
towards the forward end, but the engine stopped
before he reached the head end.   He says that the
fireman told the engineer to stop immediately after
he heard the outcry from some one on the outside.
Each and all of these witnesses say that they heard
no outcry except the one which the fireman recog-
nized, and by reason of which he gave the signal to
stop.   And there is no evidence contradictory to this,
unless we are prepared to say that the jury was justi-
fied in finding that they did hear, from the fact that
two witnesses who saw the accident from the outside
heard the plaintiff's outcries.   We do not think that
such an inference is a fair one.   The situations of the
persons in the engine was so different from that of
the bystanders, that the fact that they saw plaintiff
fall, and heard his outcries, does not show that the
persons who were in the engine did.   Nor do such
circumstance tend to overcome the positive evidence
of these men who were in the engine.   As said in the
case of *Ford v. Railroad Co*, 69 Iowa, 627 (21 N. W.
Rep. 587 and 29 N. W. Rep. 755):   "A circumstance

entirely consistent with direct evidence, does not raise an inference in rebuttal of it. And a verdict based upon such circumstances, and in contravention of direct evidence, cannot be sustained." None of the persons on the engine knew, or had reason to believe, that plaintiff was not upon the foot-board at the front end of the engine, until they heard the outcries of the bystanders. As he passed onto the side-track, in front of the engine, he disappeared from the sight of the men who were on the engine. The front end of the boiler entirely obscured him from view. The men who were handling the engine had the right to assume that he had succeeded in mounting the foot-board, and were not bound to stop the engine to ascertain whether or not he had done so. The engine was moving at the ordinary rate of speed, and no claim is made that there was any carelessness in this respect. As soon as any one on the engine heard an alarm, he immediately gave the signal to the engineer to stop, and this signal was promptly obeyed, and the engine was brought to a full stop within a few feet. We do not think there was any negligence on the part of the defendant's employes, and are constrained to hold that the defendant's motion for a verdict should have been sustained, or his requests for instructions granted.

II. If there had been sufficient evidence to take the case to the jury on the issue of negligence, still we think plaintiff could not recover, because of his want of care, contributing to the injuries complained of. The foot-board and hand-rail at the forward end of the engine extended a foot beyond either rail, and there was a hand-rail and a foot-board at the rear of the engine. The plaintiff could, with safety, have mounted the forward foot-board, without placing himself in the center of the track, in front of the moving engine, or a more prudent course for him to have taken was to have waited until the rear of the engine

came to where he was, and then to have stepped onto the foot-board. This he could have done without the least danger from accident should he have missed his hold, or fallen in the attempt to board the engine. He voluntarily took the most dangerous course, when others comparatively safe were at hand, and, in so doing, placed himself in a position to prevent recovery. We do not mean to be understood as holding that if the persons in charge of the engine failed to exercise ordinary care in stopping it after they knew that plaintiff had missed his hold, or had slipped and fallen, that plaintiff's contributory negligence would prevent his recovery. Such is not the case we are now considering. We have in mind a case where the engineer or fireman, or both, failed to keep a proper lookout, and, by reason thereof, ran down a person to whom they owed the duty of watchfulness to avoid injuring him. Applying the facts disclosed by this record to such a supposed case, it will be seen that the negligence of the defendant's employes (conceding them to have been negligent in this respect, for the purposes of the case) was not the sole cause of the injury. But for plaintiff's concurring and co-operating fault, the accident would not have happened. For the errors pointed out, the judgment of the district court is REVERSED.