A. J. C. EARL, Administratrix of the Estate of Clement G. Earl, Deceased, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Negligence:** TRESPASSERS: *Carriers.* Deceased was in a caboose to visit a passenger, without business there or intention of becoming a passenger. The caboose was struck by an incoming train, under 1 circumstances justifying a finding of negligence by the engineer, but neither he nor any employe knew deceased was in the car. *Held,* that, since deceased was a trespasser, and the railroad owed him no duty, until it discovered him, it was not liable for causing his death.

GROSS NEGLIGENCE. The fact that the conduct of employes of a rail-2 road is "unusual and reckless" does not constitute gross negligence.

*Appeal from Guthrie District Court.*—HON. A. W. WILKINSON, Judge.

FRIDAY, MAY 26, 1899.

ACTION for damages. Verdict and judgment for plaintiff, and the defendant appealed.—*Reversed.*

*Carroll D. Wright, John W. Foster,* and *Neal & Neal* for appellant.

*Ricker, Crocker & Christie* and *Wm. D. Milligan* for appellee.

LADD, J.—The deceased had aided one Whitehead in loading stock in a car, and somewhat later had walked with him from town to the caboose of the train, on which the latter was about to leave, and both entered it.   They were in conversation, but not transacting any business, and the deceased was not, and did not expect to be, a passenger.   He had no business in the caboose, and his purpose in going there does not appear.   Whitehead testified:  "I do not know what his purpose was in coming into the caboose.   I had no business to transact with Earl at the caboose.   Didn't transact any business with him there." This caboose was attached to train No. 55, which had arrived from Casey on its way west.   The switching had been completed, and the engine and cars taken up were about to be attached to the train on the main track.   They had been there a few minutes when Whitehead arose to go to the door. He listened to Earl's statement concerning the bunch of cattle which the latter thought could be bought on his return, and at that instant, noticing the near approach of an engine and train from the east, jumped to the ground, and avoided injury.   The caboose was run into and Earl killed.   The engineer of the extra was about nine hundred feet from the caboose when he first saw it, but supposed it to be an old one on the side track.   The train was moving at the rate of twelve or fifteen miles per hour.   On coming within six hundred feet, he noticed that it was on the main track, and immediately reversed the engine and applied the air brakes. When near, he stepped to the ground, fearing the engine might not stop in time to avoid collision.   The engineer testified that he used all appliances to stop the train, and this could be accomplished in moving from forty-two to forty-four rods, while the witness for the appellee was of opinion that it could have been stopped within thirty-five yards. There was evidence, though contradicted, tending to show that no emergency signal was given, and no signal to set brakes.   It may be said that there was evidence from which

negligence on part of the engineer might have been found but neither he nor any employe of defendant knew that Earl or any one else was within the car.

I.   That deceased was a trespasser was established by the uncontradicted evidence. Not a passenger, nor in the caboose by license or invitation, the defendant owed him no active duty. He had no more right to enter and occupy the caboose, under the circumstances shown, than to stand on its track, where he would be conceded to be a trespasser. The mere fact that passengers might be carried furnishes no excuse to one not sustaining that relation for using the car. Cabooses and coaches are not ordinarily held out to the public as places for visiting or the transaction of business, and those not passengers or employes, who enter for such purposes, do so without right. It is not claimed, nor could it be under the evidence, that the deceased went on the car as an escort, or by way of rendering necessary assistance to a passenger, or by the license or permission of the company. See *Railway Co. v. Lawton,* 55 Ark. 428, 29 Am. St. 48, and note (s. c. 18 S. W. Rep. 543). The situation of the deceased was not different from that of a person stealing a ride, to whom the company owes no duty, save that of refraining from willful or wanton injury. *Railway Co. v. Brooks,* 81 Ill. 249; *Railroad Co. v. Meacham,* 91 Tenn. Sup. 428 (19 S. W. Rep. 232); *Dowd v. Railway Co.,* 84 Wis. 105 (54 N. W. Rep. 24); *Gillis v. Railroad Co.,* 59 Pa. St. 129; *Railroad Co. v. Harris,* 71 Miss. 74 (14 South. Rep. 263). In the last case the court said: "To the trespassers on its trains, just as to trespassers on its tracks, the railroad company owe precisely the same duty which it owes to all mankind, and this duty is exactly what each man owes to every other; that is, abstention from wanton and willful injury in the use of one's property." The rule is thus stated in 3 Elliott Railroads, section 1255: "A railroad company owes trespassers no contract duty. Indeed, as already stated, the general rule is that it owes them no duty, except not to will-

fully injure them, and this rule applies to those who are attempting to steal a ride, or otherwise trespass upon the company's cars." Mere negligence is never sufficient; to be actionable, it must be in violation of some duty. The principle is thus put in *Sweeny v. Railroad Co.,* 10 Allen, 368: "There can be no fault or negligence or breach of duty where there is no act or service or contract which a party is bound to perform or fulfill. All the cases in the books in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered, or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty * * * has been violated. Thus a trespasser, who comes on the land of another without right, cannot maintain an action if he runs against a barrier, or falls into an excavation there situated. The owner of lands is not bound to protect or provide safeguards for wrongdoers." The general duty of a railway company to run its trains with care becomes a particular duty to no one until he is in position to have a right to complain of the neglect. The tramp who steals a ride cannot insist that it is a duty to him; neither can he when he makes a highway of the railway track, and is injured by the train. Cooley Torts, 66; Bishop Non-contract Law, section 446; 16 Am. & Eng. Enc. Law, 411. Here lies the defect in the reasoning of the second division of the opinion in *Way v. Railway Co.,* 73 Iowa, 466, in which but three judges concurred. That the company owed no duty to Way is conceded, and yet his right of recovery is based on precisely the same grounds as though he were rightfully in the car. As to him there was no duty due until his situation was known. But neither the engineer nor brakeman knew or had any reason to know that he was in the caboose. Then, by the authorities, the company was liable only for injuries resulting from willful wrong or gross negligence. If section 1307 of the Code of 1873 is to have

the interpretation there given, then the cases denying liability to trespassers on the track until discovered were erroneously decided. *Masser v. Railway Co.,* 68 Iowa, 602; *Burg v. Railway Co.,* 90 Iowa, 106; *Thomas v. Railway Co.,* 93 Iowa, 252; *Heiss v. Railway Co.,* 103 Iowa, 591; *Keefe v. Railway Co.,* 92 Iowa, 182. There is no reason why one rule should be applied to the latter, and another to trespassers in the car. While the caboose may have passengers, the track may have obstructions and employes thereon who are entitled to protection. There can be no negligence as to either until a duty owing by the company has been violated. Besides, that section makes no pretense of fixing the degree of negligence which will entitle an injured person to recover. What was said does not seem to have been necessary in deciding the case, and we are inclined to construe it as dicta. But, if it be regarded otherwise, it has been overruled by the cases referred to.

II.   The eleventh instruction was erroneous in submitting whether Earl was rightfully in the caboose. As we have seen, he was there as a trespasser, and his presence was unknown to any of the defendant's employes. The court instructed the jury that, "if you further find that the defendant's agent or employe, in handling, managing, or operating said train, or in running, handling, and operating the extra freight train alleged, performed such duties in a manner so unusual or reckless as to cause the collision alleged, and endangered the lives or safety of persons who might be rightfully in said caboose, then they were guilty of negligence, and if the death of plaintiff's intestate was caused thereby, and if such negligence on the part of defendant's agents or employes was the natural, immediate, and proximate cause of the death of said Earl, and if he was not guilty of negligence contributing thereto, then, and in such case, defendant would be liable, notwithstanding the fact that he was not a passenger on said train at the time of the accident, and not-

withstanding the fact that the relation of passenger and carrier did not exist between the said Earl and said defendant." The mere fact of the conduct of the employes being unusual or reckless was not sufficient. In a sense every act of negligence is unusual or reckless, as people generally exercise ordinary care. To warrant recovery, the employes must have been guilty of a willful wrong, or of such wantonry or recklessness in their conduct as to constitute gross negligence. Other instructions followed closely the language of *Way's Case,* in support of which our attention has not been called to any authority, and which, as we have seen, is opposed to the repeated decisions of this court.— REVERSED.