LAURENCE BOURRETT, by his Next Friend, Appellant, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY and Others.

**Railroads:** NEGLIGENCE: DUTY TO WARN. The switching of cars at a speed of six to ten miles an hour without giving warning of their approach, or keeping a lookout, is sufficient to support a finding of negligence.

**Same:** CONTRIBUTORY NEGLIGENCE. For a boy to run upon the switching tracks of a railway in pursuit of an object without ascertaining in any adequate manner the approach of cars by which he was injured is contributory negligence.

**Same:** CONCURRENT NEGLIGENCE: LAST CLEAR CHANCE. Where the plaintiff recklessly went upon the switching tracks of defendant without ascertaining whether cars were approaching, and his negligence in so doing concurred with the negligence of the defendant in failing to keep a lookout for those who might be crossing the tracks, thus causing plaintiff's injury, the defendant can not be held liable for its subsequent negligence, under the doctrine of the last clear chance, without a showing of its actual knowledge of plaintiff's peril.
Ladd and Weaver, JJ., dissenting.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

THURSDAY, OCTOBER 26, 1911.

SUIT to recover for a personal injury. There was a directed verdict for the defendants and a judgment thereon. The plaintiff appeals.—*Affirmed.*

*F. E. Gill,* for appellant.

*Wright & Sargent, A. A. McLaughlin* and *James C. Davis,* for appellees.

SHERWIN, C. J.—I.   Bordering on the Missouri river, between Pierce and Douglas, south of Second street, in Sioux City, is the baseball park.   Large numbers of people, varying from a few hundred to several thousand, attend the games.   In going and returning they pass along Pierce and Douglas streets, and freely over the ten or more railroad tracks, running east and west immediately north of the park, between that and Second street.   These are switching tracks, save a main track of the Chicago, Milwaukee & St. Paul Railroad Company, and possibly another of defendant.   The entrance to the park is from Douglas street near the northwest corner.   Foul balls frequently passed over the inclosure of the park into the street or on the track space, and the boy who returned one of these balls was given as compensation for the service admission to see the game being played.   In the afternoon of July 25, 1905, plaintiff, who was then nearly sixteen years old, and one Soelsberg, some two years older, were at the fence on the west side of Douglas street, across from the park, with a view of gaining admission in this way. As a ball passed over, plaintiff started for it, running a little east of north, and did not stop until he had "kind of stumbled" at the track, caught himself before falling, and as he raised saw a train of defendant on him, coming from the west.   He grabbed the iron on the east end of the east car, and held on until it had moved to a point one hundred and seventy feet east of Douglas street, when he fell off and was injured.

The train was being backed at a speed estimated at six to ten miles an hour, without warning of its approach by sounding the bell or otherwise, and without keeping a lookout, so that there is no serious contro-

1. RAILROADS: negligence: duty to warn.

versy but that a jury might well have found defendant chargeable with negligence.   See *Booth v. Railway Company*, 126 Iowa, 8.

But it is equally clear that the plaintiff was guilty

of contributory negligence. As the ball flew over, he started for it on a fast run toward the railroad tracks.

2. SAME:
contributory
negligence.

True, he testified that there were "cars standing west of where those cars came from," and but for this he would have seen; but he knew that these were switching tracks, and must have known that, even though cars were standing on one track, other cars might be moved on other tracks. Moreover, it is not clear how cars "west of where the train came from" could have obstructed his view of cars moving eastward from where those seen were standing. Again, he testified that before he got to the car he was thinking of the ball and not expecting a train, and that when within five feet from the track on which the train was moving he glanced west and did not see it; that a box car standing just west of the track prevented him from seeing it; but he admitted in cross-examination that this car was west of Douglas street, and did not then interfere with his vision, and that there was nothing to prevent him from seeing the train at that time, had he looked. Manifestly the plaintiff recklessly ran upon the track, without ascertaining in any adequate manner whether cars might be anticipated over the crossing. There were ten tracks, used mostly for switching purposes, as he well knew, and the fact, if such it was, that cars were standing thirty feet west of Douglass street furnished no ground for supposing others might not be moved on some of the other tracks. But it is argued that his attention was distracted by the ball. Doubtless this is so; but the danger of moving trains was perfectly apparent to him before starting for the ball, and that he was attracted by it into a place of danger will not exonerate him from the charge of negligence. The company was in no sense responsible for the passage of the ball, and it was the duty of plaintiff, before following it over the tracks to look or listen for approaching trains at some point where he might reasonably ascer-

tain whether any were coming toward the crossing. This he did not do. Though of immature years, the record leaves no doubt as to his capacity of comprehending the danger. *Masser v. Railway,* 68 Iowa, 602; *Merryman v. Railway,* 85 Iowa, 638; *Carson v. Railway,* 96 Iowa, 583. Before going on the track, even though in pursuit of a ball, he must be held bound to the exercise of reasonable precaution for his own safety. *Yeager v. Railway Co.,* 94 Iowa, 46; *Hinken v. Railway Co.,* 97 Iowa, 608; *Payne v. Railway Co.,* 108 Iowa, 188; *Crawford v. Railway Co.,* 109 Iowa, 433.

II.   The appellant contends that the defendants are liable, notwithstanding his own negligence, and bases such claim on the following propositions, stated practically in

3. SAME: concurrent negligence: last clear chance.

his own language: "It was the duty of the company, under the circumstances and evidence in this case, to keep a constant lookout, and having failed so to do when a proper lookout would have prevented the injuries . . . the company is liable." "Defendant is liable because it could have and should have prevented the injuries. . . . The defendant can not escape liability by reason of the fact that appellant exposed himself to danger, for the defendant was guilty of negligence in not discovering the plaintiff as he caught hold of the car on 'the Douglas street crossing, and its negligence continued after the exposed condition, . . . and therefore became the proximate cause of the injuries." "To make defendant liable it was not necessary that the employees of the defendant . . . actually discovered" the plaintiff's "dangerous position, for the defendant is liable where the danger was or should have been discovered by the use of ordinary care and prudence."

It may be conceded, for the purposes of our present discussion, that Douglas street was an open and well-recognized street, and that the defendant company was negligent in not keeping a lookout at its crossing thereof. But

if that be true the defendant is not liable for its negligence preceding the collision of the plaintiff with its train, because the negligence of both was at least concurrent up to that point of time.  The appellant does not contend that any of the defendant's employees in charge of the train actually knew of his peril; nor is it claimed that such employees ought to have discovered the peril.  The contention is that the defendant should have placed a lookout on the back end of the train, and that he ought to have known the plaintiff's peril.  In other words, from whatever point considered, the gist of the appellant's claim is that the defendant was negligent in not having a lookout on the rear end of the train from the point of collision to the point of injury.  And from such premise it is argued that the defendant is liable, for the reason that it had the last fair chance to prevent injury to the plaintiff, notwithstanding his own negligence in placing himself in a position of peril.  We are of the opinion that the doctrine of last chance can not be applied to the facts presented here, without overruling a large number of our own decisions, and without establishing an unjust rule.  It must be kept in mind that up to the very moment of the collision both parties were concurrently negligent, and that the defendant can not be held liable for its negligence preceding that moment.  If it be conceded that the negligence of the plaintiff ceased with the collision, it must be said that the negligence of both culminated at that time. If the negligence of the plaintiff culminated with the collision, because he was thereafter unable to extricate himself from his dangerous position, we know of no sound reason for holding that the defendant is liable, because it did not have a lookout from the point of the collision to the point of actual injury, for it was as helpless to then discover the plaintiff's peril as the plaintiff was helpless to escape from it.  In other words, the defendant's original negligence in not having a lookout left it as helpless to avoid the

injury as did the original negligence of the plaintiff render him helpless to extricate himself from his perilous position.

The doctrine of last chance is founded on actual knowledge of the plaintiff's negligence, and this court has consistently so held in all cases where the facts were similar to the facts presented here, and such holding has been uniform in nontrespass as well as in trespass cases. *Morris v. Railway Co.*, 45 Iowa, 29; *Romick v. Railway Co.*, 62 Iowa, 169; *Newman v. Railway Co.*, 80 Iowa, 679; *Keefe v. Railway Co.*, 92 Iowa, 183, where it was said: "But when the negligent act which causes an injury is done after the negligence of the injured party is known to the other party, and the injury could have been avoided by the exercise of reasonable care on his part, there is an exception to the general rule, and the contributory negligence of the injured party will not defeat a recovery. This exception depends upon the failure of the person who is sought to be made liable for the injury to use reasonable care to avoid it, after the negligence of the other party is known. It is not sufficient that means of knowledge were available, and not used, unless in an exceptional case. To hold the defendant liable for the failure of its employees to use due care to ascertain the danger which Keefe was in, without regard to his negligence, is to make the defendant absolutely liable for its failure to exercise due care, and to ignore the doctrine of contributory negligence. The care necessary to have discovered the presence of Keefe on the track was only a part of that which was due from the defendant to warn him of his danger, and to avoid injuring him. It can not be regarded as a separate and distinct duty;" *Brown v. Railway Co.*, 92 Iowa, 413; *Orr v. City Railway*, 94 Iowa, 427, where this language was used in the opinion: "It is settled law in this state that plaintiff's negligence will not enable defendant to escape liability, if the act which caused the injury

was done by defendant after it discovered the plaintiff's negligence, and if the defendant could have avoided the injury in the exercise of reasonable care. It seems to us that this instruction is in strict accord with *Davies v. Mann,* and the other authorities cited. It does no more than hold defendant responsible for the failure of its employees to use ordinary care after they saw plaintiff upon the track, and in a position of peril."

And in *Ferguson v. Railway Co.,* 100 Iowa, 741, it was said: "We do not mean to be understood as holding that if the persons in charge of the engine failed to exercise ordinary care in stopping it after they knew that plaintiff had missed his hold, or had slipped and fallen, that plaintiff's contributory negligence would prevent his recovery. Such is not the case we are now considering. We have in mind a case where the engineer or fireman, or both, failed to keep a proper lookout, and, by reason thereof, ran down a person to whom they owed the duty of watchfulness to avoid injuring him. Applying the facts disclosed by this record to such a supposed case, it will be seen that the negligence of the defendant's employees (conceding them to have been negligent in this resepct, for the purposes of the case), was not the sole cause of the injury. But for plaintiff's concurring and cooperating fault, the accident would not have happened."

In *Purcell v. Railway Co.,* 117 Iowa, 667, Mr. Justice Ladd, speaking for the court, said: "There was evidence, then, from which the jury could have concluded that the engineer saw Hunt on the bridge and in a place of peril, in time to have stopped the train and avoided the injury. Of course, it was not enough that he ought to have seen. It must appear that he actually saw or knew that he was in peril long enough before the engine reached him, to have enabled the employee to stop it before striking deceased from the track." *Barry v. Railway Co.,* 119 Iowa, 64; *Oliver v. Railroad Co.,* 122 Iowa, 220, and

*Dale v. Coal Co.,* 131 Iowa, 71, announce or follow the rule, as does also *Bruggeman v. Railway Company,* 147 Iowa, 187. It will serve no useful purpose to cite additional authority on the point under consideration; it is the rule of our own decisions, and we think it right. The conclusion reached herein disposes of the appeal. The judgment is *affirmed.*

LADD, J. (dissenting).—I am unable to concur in what is said in the second paragraph of the opinion concerning the doctrine of last fair chance. It may be doubtful whether defendant, even if it could have discovered plaintiff's peril, was in such a situation that it should be denounced as negligent in not so stopping its train as to have avoided the injury; but, in my opinion, it should not be held that actual knowledge of plaintiff's peril was essential, in order to cast upon defendant the *onus* of exercising ordinary care for his protection thereafter. The majority are mistaken, as I think, in saying that this court is committed to the doctrine that actual knowledge is necessary, in order to render the defendant liable for subsequent negligence. It is not pretended that the proposition has ever been discussed by the court. Reliance is had on mere statements of the general rule, exacting knowledge, without inquiry, as to what is sufficient to charge the party complained of with knowledge.

In *Keefe v. Railway,* 92 Iowa, 183, on which the majority mainly rely, the decedent was standing in the track, doing nothing save looking in the opposite direction, when the train, without a lookout, backed on him, and the court held that the doctrine of last fair chance was not applicable, and so for the obvious reason that if defendant was negligent in not discovering decedent until the collision the latter was equally negligent in not observing the approach of the train. In other words, the negligence of each continued up to the time of the injury, and, as said

in the opinion, "to hold defendant liable for the failure of its employees to use due care to ascertain the danger Keefe was in, without regard to his negligence, is to make the defendant absolutely liable for its failure to exercise due care, and to ignore the doctrine of contributory negligence." Whether actual knowledge, or such means of knowledge as that actual knowledge should be inferred, was essential was not discussed in that case; the court being content merely to remark that "it is not sufficient that means of knowledge were available and in use, except in exceptional cases," without pointing out the exceptional cases. In *Morris v. Railway*, 45 Iowa, 29, and *Romick v. Railway*, 62 Iowa, 169, the peril was actually known; while the proposition was not considered in *Newman v. Railway*, 80 Iowa, 672, save in saying the rule had no application to the case, which was one of concurring negligence. Nor was it discussed in *Brown v. Railway*, 92 Iowa, 413, save in inquiring whether there was evidence to justify an instruction that if an act was done after defendant's engineer had discovered plaintiff's negligence, and it could have been avoided, the company was liable. The excerpt from *Orr v. Railway*, 94 Iowa, 423, quoted in the opinion, is not open to criticism. *Ferguson v. Railway*, 100 Iowa, 741, was a case of contributory negligence. The rule was correctly stated in *Purcell v. Railway*, 117 Iowa, 667, for in that case decedent was a trespasser for whose protection defendant owed no duty, save upon actually discovering his peril. See *Earl v. Railway*, 109 Iowa, 14; *O'Keefe v. Railway*, 32 Iowa, 467. In *Oliver v. Railway*, 122 Iowa, 217, the question was not touched; it being held that plaintiff was guilty of contributory negligence. In *Dale v. Colfax Consolidated Coal Company*, 131 Iowa, 67, it was said that actual knowledge was necessary, but this was mere *dicta*, not involved in the case, and said in passing on the admissibility of evidence. In *Barry v. Burlington Ry. & Light Co.*, 119 Iowa, 62, the

court, speaking through McClain, J., who also prepared the opinion in the *Dale* case, after directing attention to the *Keefe* case and the *Orr* case, said: "But those cases, so far as they hold that the duty to exercise care to avoid injury to one who is guilty of contributory negligence in putting himself in danger arises only when the danger becomes actually known to the employees of the railroad company, do not relate to circumstances involving a duty to look out in general for the safety of others. The distinction between the care required in connection with the running of a railway train operated on a right of way, as to which the railroad company enjoys the exclusive right of possession, and the care which should be exercised in the running of a street car operated in the public streets of a city is manifest. Those operating a street car under such circumstances are bound to do so with regard to the safety of persons rightfully upon the public streets, for the street car track, notwithstanding its additional use, remains a part of the street. This distinction is well recognized by the authorities." See, also, *Dougherty v. Railway,* 137 Iowa, 258. The question is not discussed in *Bruggeman v. Railway,* 147 Iowa, 187.

A careful examination of the decisions relied upon by the majority discloses that the proposition has not been foreclosed in this state by any previous decision, but that, on the contrary, several opinions have announced the rule that actual knowledge is not essential when the injured person is at a place at which he has a right to be. The rule that contributory negligence will defeat recovery appears to have been first distinctly announced in *Butterfield v. Forrester,* 11 East, 60, though not then as a novel doctrine. Explanation of the ground thereof as a legal principle appears in subsequent decisions. Perhaps the gradual development of the law as new conditions arose accounts somewhat for the treatment of the rule in *Davies v. Mann,* 10 M. & W. 546, as an exception to the general

doctrine of contributory negligence.  Though often so re-
ferred to in the decisions, it is not now generally regarded
as exceptional, but as the means of ascertaining whether
defendant's negligence is the sole proximate cause of the
injury complained of.  Indeed, the later text books seem
to have rejected the designation of the rule as that of
"the last fair chance," which has the merit of being con-
veniently descriptive at least, and refer to it merely as
defendant's subsequent negligence.  In the cited case, the
owner of a donkey; who negligently turned it out upon
the highway with its feet fettered, was allowed, notwith-
standing his own negligence, to recover from a person
driving along the highway, who carelessly ran into and
killed it.  The ground of the decision, though not clearly
expressed by the court, has been accurately stated as fol-
lows:  "The party who last has a clear opportunity of
avoiding the accident, notwithstanding the negligence of
his opponent, is considered wholly responsible for it."  In
*Smith v. Railway,* 114 N. C. 728 (19 S. E. 863, 923,
25 L. R. A. 287), the subject is fully discussed; the court
concluding that:  "It is simply a means of determining
whether, the plaintiff's negligence is a remote or proximate
cause of the injury.  Before the introduction of the rule,
any negligence on the part of plaintiff which in any degree
contributed to the accident was judicially treated as a
proximate cause, and constituted contributory negligence
which barred recovery. . . .  This was considered a
harsh rule, as it left the plaintiff to bear all the damages,
although he may have been but remotely, and consequently
but slightly, in fault.  The doctrine, however, was quali-
fied by the ruling in *Davies v. Mann,* and it was deter-
mined that, although plaintiff was guilty of a want of
ordinary care in contributing to the injury, yet this would
not prevent him from maintaining an action, if the defend-
ant might have avoided the injury by the exercise of ordi-
nary care on his part."  A like statement will be found

in *Nashua Iron & Steel Co. v. Worcester & N. R. Co.,* 62 N. H. 159.

When thus stated, it is apparent that the rule constitutes no exception to the general doctrine of contributory negligence, and does not permit one to recover in spite of contributory negligence, but merely operates to relieve the negligence of plaintiff, which would otherwise be regarded as contributory, from its character as such.   This is accomplished by characterizing the negligence of defendant, if it intervenes between the negligence of the plaintiff and the accident as the sole proximate cause of the injury, and the plaintiff's antecedent negligence as a condition or remote cause.   If then the antecedent negligence of plaintiff be found merely a condition or remote cause, it can not be contributory, since it is well established that negligence, to be contributory, must be one of the proximate causes.   Since the effect of the application of the rule then is to strip from the negligence of plaintiff the attribute expressed by the word "contributory," it follows that there can be no liability for defendant's subsequent negligence, unless and until it has been definitely determined that there has been some breach of duty on the defendant's part, intervening between the antecedent negligence of plaintiff and the accident.   Manifestly, in order that defendant's negligence shall be the sole proximate cause, the plaintiff's negligence must have expended itself before the breach of defendant's duty complained of; for if, notwithstanding defendant's fault, plaintiff's negligence continue to the instant of the accident, either the negligence of the parties is concurrent, or else plaintiff has had the last opportunity of avoiding the injury.

These views find support in Patterson's Railway Accident Law, 91, where it is said that: "The rule has been misunderstood and misapplied.   It means only that negligence upon the part of plaintiff which bars his recovery from the defendant must have been a proximate cause of

the injury, and that it is not a proximate, but only a remote, cause of the injury when the defendant, notwithstanding the plaintiff's negligence, might, by the exercise of ordinary care and skill, have avoided the injury. Thus stated, the rule is consistent with the theory upon which the doctrine of contributory negligence is based, and furnishes no support for that of comparative negligence." The same thought is expressed in *Orr v. Railway,* 94 Iowa, 423, where it is said that, when the rule is applied, "the plaintiff's negligence is only the remote cause of the injury he sustains, and is not contributory negligence; second, contributory negligence is no bar to an action for wilful injuries." Mr. Beach has considered the subject at great length in his work on Contributory Negligence, and is of opinion that the following principles cover every case in which a correct application has been made of the rule of *Davies v. Mann;* "(1) When the plaintiff's negligence is only a remote cause of the injury he sustains, it is not contributory negligence, and he may recover; and (2) contributory negligence is no bar to an action for wilful injury." Beach on Contributory Negligence, section 28. See Shearman & Redfield · on Negligence, section 99; article on Doctrine of Last Clear Chance, by Geo. W. Payne, in 66 Cent. Law J. 215. See, also, *Richmond Traction Co. v. Martin,* 102 Va. 209 (45 S. E. 886); *Ward v. Railway,* 96 Me. 136 (51 Atl. 947); *Kellny v. Railway,* 101 Mo. 67 (13 S. W. 806, 8 L. R. A. 783.)

A clear statement of the rule, regardless of nomenclature, has seemed necessary before determining the controverted question as to whether, to render defendant liable, it actually must have known of plaintiff's peril in time to have avoided the injury by the exercise of reasonable care. This court has frequently held that where there was such knowledge defendant will be responsible for the exercise of ordinary care. See *Sutzin v. Railway,* 95 Iowa, 304; *Brown v. Railway,* 92 Iowa, 408; *Conners v. Rail-*

*way*, 87 Iowa, 147; *Morbey v. Railway*, 116 Iowa, 84; *Cooper v. Railway*, 44 Iowa, 134. Will it suffice if defendant, by the exercise of ordinary care, should have discovered the peril to which plaintiff's negligence exposed him, and have avoided injuring him? Bearing in mind that plaintiff's negligence, to be regarded as remote, must have culminated before the injury, and that intervening his negligence and the injury defendant must have been guilty of some breach of duty then owing plaintiff, causing the injury, in order to create a liability, it is manifest that whether actual knowledge of plaintiff's peril is essential necessarily depends on the nature of the duty due plaintiff. If he is merely a trespasser, or for some other reason the duty of observing him does not devolve on defendant, then evidently no obligation arises on defendant's part until his peril actually is discovered. *O'Keefe v. Railway*, 32 Iowa, 467; *Earl v. Railway*, 109 Iowa, 14. But the rule is otherwise where a duty is imposed to exercise reasonable care to ascertain the danger, and ample means to do so are available. Thus persons who travel over a highway or street crossing, or at places the public generally is licensed to pass, are not trespassers, and are where they have the right to be, and the railroad company owes them the active duty of keeping a lookout for them. *Black v. Railway*, 38 Iowa, 515; *Hart v. Railway*, 56 Iowa, 166; *Kinyon v. Railway*, 118 Iowa, 349; *Thomas v. Railway*, 103 Iowa, 649; *Booth v. Railway*, *supra*.

And so of stock at a crossing. *Wooster v. Railway*, 74 Iowa, 593. In the last case the precise question was determined. Plaintiff was allowed to recover for injury to cattle at a highway crossing, although the person in charge of them was negligent; the court approving of an instruction that, if the company's employees could have avoided the collision after the danger was, or, in the exercise of reasonable care, should have been, discovered, re-

covery could be had. This rule was subsequently approved in *Barnard v. Railway,* 133 Iowa, 185, and finds support elsewhere, *Denver, etc., Ry. v. Buffehr,* 30 Colo. 27 (69 Pac. 582); *Klockenbrink v. Railway,* 81 Mo. App. 351; and *Richmond Traction Co. v. Martin,* 102 Va. 209 (45 S. E. 886). Indeed, no actual knowledge of the peril of the historic donkey in the highway was shown in the celebrated case of *Davies v. Mann,* 10 Mees. & W. 546, in which the rule is supposed to have originated; the failure to discover and avoid injury to him being the true ground of the negligence.

Reasonable means of knowledge is regarded as equivalent to knowledge generally when there is a duty to investigate, and this is no sound reason for not applying the rule to the doctrine of the "last fair chance," even though there may be cases to the contrary outside of this state.

In a note to *Bogan v. Railway,* 129 N. C. 154 (55 L. R. A. 418), will be found an exhaustive discussion of the doctrine of "the last fair chance;" the annotator concluding that the review of the decisions shows "a decided tendency on the part of the courts to apply the doctrine . . . to any omission of duty on the part of defendant, whether before or after the discovery of the peril in which the plaintiff or deceased had placed himself or his property by his antecedent negligence, if that breach of duty intervened or continued after the negligence of the other party had ceased."

A perspicuous statement of the principle appears in *Teakle v. Railway,* 32 Utah, 276 (90 Pac. 402, 10 L. R. A. (N. S.) 486): "There is much reason for the distinction that the railroad company should not be held liable in case of one, not a trespasser, exposed to peril through negligence, not only after the consequences of such negligence have been discovered, but which ordinarily could have been discovered, if there was a breach of duty

continuing or intervening after the commission of the contributory negligence. In the one instance, the train operatives were not called upon to expect or anticipate the trespass or the presence of persons, and hence owed no duty of lookout or of giving warnings. In such case, no duty was imposed on them until the trespasser was discovered in a position of peril. In such case the liability of the company must solely depend upon a breach of duty subsequent to the discovery. If, on the other hand, through a long usage or custom, the public has made a thoroughfare of the track in a populous city or thickly settled community, though not with any express authority, but under circumstances of an implied license, the train operatives are required to reasonably expect and anticipate the probable presence of persons on or near the track at such place; and there is consequently imposed upon the train operatives a duty toward such persons of a reasonable lookout. When, therefore, it is said that the railway company is liable in such case for an omission of duty on the part of the train operatives, not only after the consequences of the injured or deceased's negligence have been discovered, but also for such an omission of duty, as, had it reasonably been performed, such consequences could ordinarily have been discovered, it necessarily implies the existence of a duty owing by the train operatives toward the injured or deceased person before, as well as after, the commission of the contributory negligence. In other words, before a person inflicting an injury can be charged with an omission of duty in failing to discover a perilous situation of another, there must be a duty owing by him to the injured or deceased person which, had it been performed with reasonable care, would have disclosed to him the exposed situation of the person receiving the injury." See, also, supporting these views, *Scoville v. Railway,* 81 Mo., 434; *Smith v. Railway, supra; Richmond Passenger & Power Co. v. Gordon,* 102 Va. 498 (46 S. E. 772);

*Memphis St. Ry. v. Haynes,* 112 Tenn. 712 (81 S. W. 374); *Birmingham, etc., R. Co. v. Brantley,* 141 Ala. 614 (37 South. 698); *Meng v. Railway,* 108 Mo. App. 553 84 S. W. 213).

Enough has been said to indicate that, according to reason and the weight of authority, the defendant's liability for injury resulting from any act or omission on its part after the cessation of plaintiff's negligence depends solely on whether such act or omission constituted a breach of any duty then owing to the plaintiff, and the nature of that duty, whether to keep a lookout at a particular place, or because in a particular employment or situation, or having actual or implied knowledge of the peril, is not material, so long as the act or omission constitutes a breach of duty. It is unnecessary now to discuss when negligence of the injured party should be said to have culminated, but see *Bruggeman v. Railway,* 147 Iowa, 187; note to *Dyerson v. Railway,* 7 L. R. A. (N. S.) 132; *French v. Railway,* 76 Vt. 441 (58 Atl. 722); *Consumers' Brewing Co. v. Doyle,* 102 Va. 403 (46 S. E. 391); *Kolb v. St. Louis Transit Co.,* 102 Mo. App. 143 (76 S. W. 1050); *Pickett v. Railway,* 117 N. C. 616 (23 S. E. 264, 30 L. R. A. 257, 53 Am. St. Rep. 611); *Houston & T. C. R. Co. v. Sympkins,* 54 Tex. 615 (38 Am. Rep. 632); *Texas & N. O. Ry. v. McDonald,* 99 Tex. 207 (88 S. W. 201); *Butler v. Railway,* 99 Me. 149 (58 Atl. 775, 105 Am. St. Rep. 267).

The obligation of the employees of a steam railway company to keep a lookout at the street or highway crossings is precisely the same as that of the employees of a street railway company to keep a lookout for pedestrians and others in the use of the streets of a city, for that those on the crossing or in the streets are where they have a right to be, and in my opinion there is no ground whatever for saying, as was held in *Barry's* case, and others following it, that means of knowledge is sufficient to charge the

company with knowledge of the injured party's peril, and declining to apply the same rule in the case at bar.

WEAVER, J.—I concur in the dissent expressed by Mr. Justice Ladd.