THE CENTRAL RAILROAD AND BANKING COMPANY vs. SMITH.*

1. The omission of specific acts of diligence prescribed by statute or by a valid municipal ordinance, is negligence per se, and the court may so instruct the jury.

2. An ordinance limiting the rate of speed in passing over crossings to ten miles an hour, does not imply that this rate is not to be exceeded between crossings.

3. As matter of fact, to walk along the middle of a railroad track between crossings when it is dark, and without knowing and remembering whether a train is due or not, and without looking out in both directions for trains that may be due, and without listening attentively and anxiously for the roar and rattle of machinery as well as for the sound of bell or whistle, is gross negligence.

4. A person, while grossly negligent himself, has no legal right to

---

*BLANDFORD, J., did not preside in this case, on account of providential cause.

count on due diligence by others, but is bound to anticipate that others, like he has done, may fail in diligence, and must guard, not only against negligence on their part which he might discover in time to avoid the consequences, but also against the ordinary danger of there being negligence which he might not discover until too late.

March 26, 1887.

Railroads. Damages. Negligence. Charge of Court. Before Judge RICHARD H. CLARK. Clayton Superior Court. September Term, 1886.

Smith brought his action against the Central Railroad to recover damages for a personal injury. On the trial, the evidence for the plaintiff showed, in brief, as follows: On the morning of February 7, 1885, about five o'clock and before daylight, Smith entered Jonesboro, got on the track at a public crossing and started down its center, going to a house about 200 yards distant. When he had gone about sixty-five or seventy yards, the defendant's passenger train came down the track. He did not hear or see it until it was almost upon him and it was too late to get out of its way, and it ran over him and cut off his leg. No bell was rung or whistle blown as the train approached the crossing, nor was the speed reduced. It was running at a rate variously estimated at from thirty to forty-five miles an hour. People frequently walked on the track at that point. The wagon road runs parallel to the track and on the opposite side from the house to which plaintiff was going, but there was a gully between the track and the road. On the side of the track next to plaintiff's destination there was a passway leading along the right of way. An ordinance of the town of Jonesboro provides that engines and cars of railroad companies shall not be run over crossings, where streets or alleys of the town cross the track, at a rate of speed greater than ten miles per hour.

The evidence for the defendant was, in brief, as follows: The engine and cars were being run at about ten or

twelve miles an hour. The train did not stop at Jonesboro. A signal was blown some distance before reaching the depot. The bell was ringing. At the point where the plaintiff was injured, there is a cut and a curve in the road, and a man on the track could be seen only a short distance ahead, so that after passing the crossing and giving the engine more speed, it would be impossible to stop before striking the man when discovered. None of the railroad's employés knew of the injury, though they were on the lookout. There was testimony as to the extent of the injury, loss of capacity to labor, etc.

The jury found for the plaintiff $4,800. The defendant moved for a new trial on the following, among other grounds:

(1), (2) Because the verdict was contrary to law and evidence, and was excessive.

(3) Because the court charged as follows: "If you should believe from the evidence that the injury occurred within the town of Jonesboro, and that there is an ordinance of the town that prevents trains from running through the town at a greater rate of speed than ten miles per hour, and that the train was running, when the injury happened, at a greater speed than ten miles per hour, that was an act of negligence."

(4) Because the court charged that if the jury believed from the evidence that the train was being run where there were crossings, without tolling the bell as long as necessary and checking and continuing to check its speed, that would be negligence.

(5) Because the court admitted in evidence the ordinance of Jonesboro above referred to.

(6) Because the court charged as follows: "Although defendant's agents and employés may have disregarded the law in running the cars, and may have disregarded the ordinances of the town of Jonesboro in running the train, yet if a reasonably prudent man, situated as plaintiff was, could, by the exercise of ordinary diligence, have avoided the injury, then he cannot recover."

The motion was overruled, and the defendant excepted.

A. R. LAWTON; JOHN D. STEWART; W. L. WATTERSON, JOHN I. HALL, for plaintiff in error.

SPENCE & STEWART; C. W. HODNETT; R. T. DORSEY, for defendant.

BLECKLEY, Chief Justice.

Smith recovered against the Central Railroad Company heavy damages for a personal injury. The railroad company made a motion for a new trial, and it was overruled. One of the grounds of the motion was, that the judge instructed the jury that if there was a failure to check the speed of the train and ring the bell at a crossing within the limits of the town of Jonesboro, it was negligence; also that a failure to observe an ordinance of the town as to the rate of speed, if they found there was such an ordinance (which question he referred to the jury), would be negligence. He charged them touching that ordinance as if it applied to the whole town; whereas, in looking to the record, we find that the ordinance applies only to the crossings within the town. It was not an ordinance limiting the rate of speed in running all the way from one corporation line to the other, but simply limiting the rate of speed to not exceeding ten miles an hour on the crossings.

1. The omission of specific acts of diligence prescribed by statute, or by a valid municipal ordinance, is negligence *per se;* and the court may so instruct the jury. While negligence is always a question of fact when the law is silent touching the specific act done or left undone, yet where a statute expressly enjoins an act, the act is then within all degrees of diligence, even the very lowest, and its omission is negligence as matter of law. Whether the prescribed act was done or not in the given case, is of course by its very nature a question of fact, but whether

it should or should not have been done, the statute settles by prescribing it as a duty.    65th *Ga.* 120 ; Code, §§708, 710.

2.  The next point we rule is, that an ordinance limiting the rate of speed in passing over crossings to ten miles an hour, does not imply that this rate is not to be exceeded between crossings.   The injury occurred between crossings, some sixty-five yards from the nearest ; and the ordinance did not apply to that point ; yet the judge instructed the jury that if, at the time the injury occurred, the rate of speed was more than ten miles an hour, that would be negligence, provided there was an ordinance in evidence (as there was) applicable to the town of Jonesboro.  This instruction was erroneous because the ordinance did not apply to the place of the injury, the same not being a crossing.

3.  The circumstances of the injury were very striking, and somewhat peculiar, considering that there was a recovery.   Smith, shortly before day while it was still dark, got on the railroad track in Jonesboro at a crossing, and turned down the track, using it for a walk, and had gone only about sixty or sixty-five yards when the train, running at high speed, struck him, threw him off of the track, crushed his leg and injured him seriously.   The evidence as to the negligence of the railroad company was somewhat conflicting, but there was an admitted failure to ring the bell when approaching and passing over the crossing; Smith, however, was not on the crossing, nor on that side of it which the engine was upon in approaching it; he was on the farther side of the crossing.   The train was probably running at a much higher speed than it ought to have run so near to a crossing.   There was some evidence tending to show that the speed was low ; but grant that it was high, too high, and that there was very great negligence on the part of the railroad company, yet it is manifest that Smith was out of his place at the time he was injured.   Grant that the track was often used by persons to walk along it;

that there was no objection to such use; that Smith was there by implied or tacit license; he was there under circumstances that required him to have all his senses on the alert for trains, and to get out of the way when any of them approached.   It would be flagrantly unreasonable and improbable to presume that he or any one else had the shadow of a right to use the track, especially at such an hour, on any other condition.   The train was on its regular schedule time.   He quietly walked along upon the track as if it belonged to him; the train struck him, knocked him down and broke his leg, those on the engine not seeing him or being aware of his presence.   It was at least as much his business to look for the engine as it was the engineer's business to look for him.   The engine was a much larger object than he was; it carried a headlight and could have been seen as far as he could.   It was not possible for the engineer to have discovered him on the track sooner than he could have seen the headlight.   The presence of the engine was more to be expected by him than his presence was to be expected by the engineer.   He had much less reason to be surprised than the engineer had.   As a matter of fact, to walk along the middle of a railroad track between crossings when it is dark, and without knowing and remembering whether a train is due or not, and without looking out in both directions for trains that may be due, and without listening attentively and anxiously for the roar and rattle of machinery as well as for the sound of bell or whistle, is gross negligence.

4. There is very frequently a mistake made in not considering our duties to the absent.   Corporations are necessarily absent.   They cannot be present otherwise than by a fiction.   They are blind and deaf, and have no hands; and they are constrained to transact their business and conduct their operations by means of servants and agents.   They are entitled to no more protection than a natural person employing such instrumentalities; but are entitled to as much.   If there is any difference upon principle, a

fair mind would be disposed to be rather more indulgent towards them, and to treat them like an infirm natural person, who, by reason of having deficient physical powers of his own, had to employ servants and agents necessarily. But the law places all persons, natural and artificial, simply upon equal terms as to the shortcomings of their employés. Everybody knows that servants and agents are prone to be less attentive to the business of employers than men are to their own affairs. Has anybody a right, by an act of gross negligence on his own part, to put an employer to the risk of injuring him by the negligence of a careless servant? You send your servant to do something upon your premises; I have leave, express or implied, to be upon the same premises; by my negligence I get in the way of your servant; he proves to be negligent also, and I am injured; I bring an action, and maintain it, against you for the negligence of your servant. If I am in my right place and in the use of proper care and diligence, you ought to answer for your servant the same as for yourself; but if I am out of place, and thereby put you to the hazard of your servant's approaching me negligently and hurting me, it ought to be a strong case that would entitle me to recover against you—a very strong case. The case before us is very weak.

A person, while grossly negligent himself, has no legal right to count on due diligence by others, but is bound to anticipate that others, like he has done, may fail in diligence, and must guard not only against negligence on their part, which he might discover in time to avoid the consequences, but also against the ordinary danger of there being negligence which he might not discover until too late. Smith shows by his own testimony that he did not discover his danger. If he had been on the crossing, or at any place he was by right entitled to be, he would have been warranted in assuming that the whole world would be diligent in respect to him and his safety, but as he was engaged in an act of gross negligence himself, he ought to

have anticipated that somebody else might fail in diligence, and that the consequences might come down upon him before he discovered the negligence. This view of the law of the case was not presented by the court in charging the jury, but, on the contrary, it seems to have been the opinion of the judge, and so announced in the charge, that unless Smith could have avoided the consequences of the company's negligence by the exercise or ordinary care (his duty to exercise that care beginning when he might or ought to have discovered the company's negligence), he could still recover partial damages, under the rule of apportionment laid down in the code for cases of contributory negligence. The error of this position, under the facts of the present case, is that Smith was under obligation, when grossly negligent himself, to anticipate negligence as well as to discover it. He could not discover it until it had begun; he ought to have anticipated that it might begin, and that he might not find it out in time to shun the consequences.

There are various grounds in the motion for new trial, various points made, but what we rule disposes of the case upon its real merits, and it is unnecessary to deal with every point. We reverse the judgment with the rulings which I have read from the bench in the notes prepared to be used as a syllabus to this opinion. The court erred in the charge, and the verdict was not warranted by the evidence.

Judgment reversed.