TEXAS & NEW ORLEANS RAILWAY COMPANY v. ED. MCDONALD.

No. 1447.   Decided June 22, 1905.

**1.—Contributory Negligence—Sitting Under Car.**

Plaintiff, employed by a city to unload cars of gravel delivered to it by a railway upon a spur track, during the noon hour, sat down under one of the unloaded cars to eat his lunch; while so engaged he was injured by a movement of the car caused by a switch engine coming upon the spur to deliver loaded and take out emptied cars; he had no reason for relying on the cars not being moved other than that such work, during the two or three days he had been employed there, had been done before or after his hours of labor. Held that the facts showed contributory negligence on his part unexcused by any circumstances shown, which required reversal by the Supreme Court of a recovery by him of his injuries from the railway company on the ground of negligence by its servants.   (Pp. 210–213.)

*Baker, Botts, Parker & Garwood; Andrews, Ball & Streetman;* and *C. L. Carter,* for plaintiff in error.—Under the evidence in this case the appellant was entitled to a peremptory instruction, because the undisputed evidence shows that the plaintiff, in assuming the position which he did beneath the railroad cars, on the railroad track, at the time and under the circumstances which he did, was guilty of contributory negligence as a matter of law, and the plaintiff is therefore not entitled to recover. Missouri, K. &. T. v. Cowles, 4 Texas C. R., 875; Missouri, K. & T. v. Cowles, 96 Texas, 24; Andrews v. Central R. & B. Co., 10 L. R. A., 58; Rumpel v. Oregon, etc., R. R., 22 L. R. A., 725; Texas & P. Ry. Co. v. Young, 27 S. W. Rep., 146.

*R. R. Hazelwood* and *Jno. W. Parker,* for defendant in error.—On the issue of appellant's contributory negligence, can it be said in view of

the circumstances of the case—the fact that a portion of the cars remained to be unloaded; that it was the noon hour, and a great number of men about the place where the cars were; that it had not been the practice to remove empty cars at that hour, and that it was a hot day, and that the cars on the side appellee was on afforded the only convenient shade—we say, can it be said that the act of appellee in seating himself, not beneath the car, but upon the end of a tie in the shade of the car, to eat his meal, under all the circumstances, was an act by the consensus of mankind to be condemned as negligence? It seems to counsel not. To their minds the act was one that any man of ordinary care might have done. Counsel for appellee earnestly insist that both questions—the negligence of appellant and the contributory negligence of appellee, were for the determination of the jury, and that the court correctly submitted them to the jury.

[From argument in support of a motion for rehearing by defendant in error, which was overruled.]

Counsel was asked on the oral argument if he knew of a case where a person who had sat upon or near a railway and been injured by a moving car, had been allowed to recover, and he answered he did not. This was true, but the statement should have been added that there was not a single one of the cases that could not be distinguished from the present one. In every one of them the injured person was a trespasser or had a clear view of the train for such a distance as to render the failure to see it absolutely inexcusable.

The following are the cases that have come under counsel's observation: Houston & T. C. Ry. v. Smith, 52 Texas, 185. (Walking on track where he had no right to be, and was under the influence of liquor.) Houston & T. C. Ry. v. Richard, 59 Texas, 376. (Walking on track where he had no right to be.) Hughes v. Galveston, H. & S. A. Ry., 67 Texas, 596. (Sitting on track where he had no right to be.) Galveston, H. & S. A. Ry. v. Ryon, 70 Texas, 60, and 80 Texas, 61. (Standing on end of tie where track crossed by footway cleaning mud from his shoes; was partially deaf; train in full view for long distance.) Missouri Pac. Ry. v. Evans, 71 Texas, 369. (Drunk and on track where he had no right to be.) Artusy v. Missouri Pac. Ry., 73 Texas, 193. (Partially deaf, and walking on track where there was a footway, with approaching train in full view for a long distance.) Galveston, H. & S. A. Ry. v. Chambers, 73 Texas, 297. (Child entered on track, where it seems she had no right to be, and in front of detached portion of train which was in full view, and so near that it could not be stopped.) Missouri Pac. Ry. v. Porter, 73 Texas, 307. (Boy walking on track and no evidence showing when struck, he was at place where he had a right to be.) Houston & Tex. C. Ry. v. Smith, 77 Texas, 181. (Boy lying on track at a place where he had no right to be.) Sanches v. San Antonio & A. P. Ry., 88 Texas, 118. (Standing on track in front of moving engine without looking.) Texas & Pac. Ry. v. Breadow, 90 Texas, 27. (Struck while walking on track, evidence indicating that he was off the track when seen by employes, and then entered on track before engine, his peril not being discovered by employes.) Texas & Pac. Ry. v. Staggs, 90 Texas, 460. (Struck while walking on track, where it seems he had no right to be.) Cowles v. Missouri, K. & T.

Ry., 96 Texas, 25. (Struck while stopped in defendant's yard examining coupler, and car suddenly moved.) Texas, etc. Ry. v. Barfield, 3 S. W. Rep., 666. (On track other than public crossing when struck.) Smith v. Fordyce, 18 S. W., 664. (Drunk and went upon track.)

There are many cases where persons injured on a railway who were rightfully there have been allowed to recover. The following are some of the cases:

Crossing Cases.—International & G. N. Ry. v. Starling, 16 Civil Appeals, 368. (Knew train was approaching and yet undertook to urge his team over crossing and was struck.) Over v. Missouri, K. & T. Ry., 73 S. W., 536. (Plaintiff was struck while stopping on the crossing tying his shoe.)

Footway Cases.—Texas & Pac. Ry. v. Watkins, 88 Texas, 24. (Lady walking by side of track caused to jump in front of engine coming up behind her without warning. The court held she was licensee and that "the circumstances under which the party went upon the track are merely evidence upon the issue of contributory negligence.) Lee v. International & G. N. Ry., 89 Texas, 587. (Deceased was walking along track used for footway, when his foot was caught in frog.) Washington v. Missouri, K. & T. Ry., 90 Texas, 317-318. (Deceased was walking in footway on right of way by side of track, when train wrecked and car thrown upon him.) International & G. N. Ry. v. Williams, 34 S. W., 161. (Deceased was walking along track used for footway and had his foot caught in frog; held, question of contributory negligence for the jury.) Texas & Pac. Ry. v. Phillips, 37 S. W., 620. (Boy walking on track at place used for footway and struck by engine. Held, question of negligence for jury.)

Loading and Unloading Car Cases.—International & G. N. Ry. v. Pennell, 2 Texas Civ. App., 128; International & G. N. Ry. v. Hall, 25 S. W., 52; International & G. N. Ry. v. Neira, 28 S. W., 95; St. Louis & S. W. Ry. v. Fenlaw, 36 S. W., 295, 296; Houston & T. C. Ry. v. Kimball, 43 S. W., 1049; St. Louis & S. W. Ry. v. Holmes, 49 S. W., 658; San Antonio & A. P. Ry. v. Jazo, 25 S. W., 712; Missouri, K. & T. Ry. v. Holman, 39 S. W., 130.

It is true that none of the cases cited above is precisely analogous to the one under consideration, but counsel can not see why, if any one of the plaintiffs in the loading and unloading cases had not finished his work upon the arrival of the noon hour and meant to do it after that hour, he could not have remained on or about the car without subjecting himself to the charge of negligence in the judgment of all mankind. It must be the case that the arrival of the noon hour does not interrupt the work of loading or unloading cars in a great many instances; perhaps in a majority of them. Do men who continue the work at that hour or pause for a few moments to eat a hurried meal on or near the cars forfeit their right to damages for injury inflicted upon them by the negligent movement of the cars? If they do not it will be difficult to distinguish such cases from the present one. The rule is settled in Texas that negligence is in practically every case a question of fact and not of law. Sanches v. San Antonio & A. P. Ry., 88 Texas, 119; Rail-

way v. Ryon, 80 Texas, 61; Texas & P. Ry. Co. v. Murphey, 46 Texas,
368.

WILLIAMS, ASSOCIATE JUSTICE.—The defendant in error, the
plaintiff below, recovered judgment in the district court and Court of
Civil Appeals against plaintiff in error, as defendant, for damages for
personal injuries sustained under the following circumstances:

Plaintiff was in the service of one Shea, a contractor with the city of
Houston, to whom the defendant was delivering gravel upon flat cars
on a spur track which was located on Burnett Street, in that city, run-
ning east and west. West of the place of accident was McKee Street,
and east of it was Hardy Street, both running north and south and
intersecting Burnett Street. For several days before plaintiff was hurt,
the defendant had been delivering upon this spur track the cars loaded
with gravel which was taken off and put in wagons by men employed by
Shea. From time to time the unloaded cars were removed and other
loaded ones set in to be unloaded. The evidence conflicts as to the time
of the day when this handling of the cars had been done; the plaintiff
introducing the evidence of a witness from which it might be inferred
that it had been done, at least during the time of plaintiff's employment
and for a day or two before, in the intervals between the times of the
hands quitting and resuming work in the evenings and mornings, and
when they were not about the track. The defendant's evidence, on the
other hand tended to show that the practice had been to take out empty
and put in loaded cars in the day time, and that, in order to avoid inter-
ruption of the work of unloading, it had been arranged between Shea's
representative and the employes of the defendant that this was to be
done during the noon hour from twelve to one o'clock, when Shea's
men were not at work but were getting their dinners. On the day in
question there were, upon the spur and west of McKee Street, a long
string of unloaded cars. East of that street and between it and Hardy
Street, were other cars, some of which had been unloaded and others
not, an opening between the two strings having been left at McKee
Street as a passage way. The number of cars in the last named string
is variously estimated, but there were certainly more than two, and all
but two had been unloaded. Of the two nearest Hardy Street one had
been nearly unloaded and the other was full of gravel. On that day,
just before twelve o'clock, Shea's representative arranged with defend-
ant's foreman to take out the unloaded cars and put in other loaded
ones during the noon hour in order that there might be work for the
hands to do in the afternoon. An announcement of this arrangement
was made to the men at or just before noon, but plaintiff and some of
the others did not hear it. Plaintiff had been at work about that place
for two or three days, but, as well as can be gathered from his confused
statement, had been unloading cars only a day and a half. According
to his testimony, he had known of no engine coming in upon this spur
during the day time, and did not expect that the standing cars, which
he says were there all the while he worked there, would be disturbed
during the hour allowed for dinner. When the signal for dinner was
given the hands left their work of unloading the cars, and those who
had their dinner with them sat down to eat at various places near the

cars. As the weather was hot, some of them sought the shade of trees and weeds nearby. Plaintiff and two others took their positions under one of the unloaded flat cars, plaintiff sitting on the end of a cross tie outside of but near to the rail and in front of the brakebeam, facing east, with the edge of the car extending over him. While he was thus seated, employes of defendant came upon the spur track with an engine to take out the empty cars, coupled with the cars west of McKee Street, pushed them across the open space and struck those east of that street, causing them to move eastward so that the brakebeam or shoe of the one by which plaintiff was sitting struck him, knocking him under the wheels and causing the loss of both legs. The evidence, though conflicting, is sufficient to authorize a conclusion that this was done without any signal of bell or whistle or other warning of the intended movement except the announcement before stated not heard by plaintiff.

The part of Burnett Street south of the track, on which side plaintiff was seated, was unused as a street and was covered with tall weeds. There is evidence to the effect that, before the movement of the cars, a switchman walked down on the north side a part of the distance from McKee to Burnett Street, but did not look under the cars to see if persons were there. There is much testimony in the case directed to the question, whether or not the parties under the car could have been seen by him or others attending the engine, much of which, as stated, is very obscure. It does not show that any of the defendant's servants did see them or know their situation, and the judgment is not based on that theory. Nothing is shown to have been brought to their knowledge during the time they had been engaged in handling the gravel cars to indicate a probability that any of Shea's hands would be under the cars. It was shown, indeed, that this spur, prior to this period, had not been much used and that engines had rarely gone upon it; that it had been a storage or repair track for cars in bad order, and that it had been a practice for employes of defendant to eat their dinners, and for children to play, about and under such cars. But all cars of this character had been removed to make room for the movement of the gravel cars, as stated, and, during the time of plaintiff's service there, and longer, this had been the use made of the track. There is nothing to indicate that plaintiff knew of or was influenced by the practice of the employes and children to be under the cars.

One of the positions of the defense is that, from these facts, no reasonable conclusion can be drawn but that plaintiff was himself guilty of such negligence, contributing to his injury, as precludes him from recovering, and we are of the opinion that it must be sustained.

That the act of sitting upon a railroad track over which cars are expected to pass is a negligent one, which precludes a person guilty of it, when hurt, from complaining of mere negligence on the part of those operating the cars in failing to discover his presence and avoid injuring him, is well settled. (2 Thompson Com. Neg., sec. 1789 and cases cited.) Of what character was plaintiff's act in not only sitting on the track but in sitting immediately under a car where his view of the movements of the defendant's servants, and their view of him were greatly, if not wholly, obstructed, unless it is excused by his claim that he did not know or expect that the cars would be moved. What as-

surance had he of this? He had none, according to any view that can be taken of the evidence. That for defendant is to the effect that the switching of the cars was done in strict accordance with the understanding and the previous practice. This, however, may be treated as disproved by the evidence for plaintiff. The facts stated by the witness for plaintiff from which the inference is drawn that the taking out and putting in of cars had, for a few days prior to the accident, been done between the times when Shea's hands quit work in the evenings and resumed in the mornings do not go to the extent of showing that there had been any understanding that the business should be managed in this way, or that this practice should continue and be uniform, They gave no assurance that the defendant would not take out empty cars at any other time when it could do so consistently with the work being done for Shea.

When we come to plaintiff's own testimony we find that the only facts stated by him as a basis for his belief that the cars would not be disturbed are that these cars had been on this track and had not been moved during the time of his service there, and that no engine had come upon the spur. He claims, not that any particular time had been fixed for putting in and taking out cars, but that he judged they were not to be disturbed before they were unloaded. He says: "I do not know whether it was the intention to move these cars until they had been unloaded or not; they were there to be unloaded, and I knew that after we got them unloaded, I supposed they would move them somewhere; I did not suppose they would do that until they were unloaded." His inference that loaded cars would not be taken out was a just one, but the two that had not been unloaded were so connected with others that were empty, that any attempt that might be made to take away the latter was likely to move the former, and that is what happened.

We have asked what assurance he had that the cars would not be moved, because in our opinion nothing short of that would justify him in taking a position, merely from choice and for his own pleasure, where any movement of the car was almost sure to hurt him. In taking this position, he was not performing any duty or work, and had not even the excuse that it was the only convenient place where he would be in the shade. Without some definite assurance or understanding of the kind referred to, the only restriction upon the right of the defendant to move its cars was that to be implied from the fact that it was delivering them to be unloaded by Shea's men, and was permitting all uses of them and of the track and right of way which was proper in carrying on such business. This imposed upon it the duty of conducting its business with due regard to the safety of the men while engaged in carrying on this work, and had plaintiff been hurt while so engaged his case would have been different. He would then have been where he had the right to be and where defendant must have anticipated he would be; and it may be that defendant would have had no right to disturb the cars without knowing his situation and he could have relied on the observance of its duty. But as he was not thus employed, no such restriction existed upon the right of the defendant to control its own business, and in doing so it was under no obligation to the plaintiff that it did not owe to people generally who might be about the track and

cars. Hence he had no right to assume that it would know that he might be situated as he was and would find him out.

There being nothing to prevent the defendant moving the cars at that time, the very fact that they were cars on a track, the business in which they were employed, constituted a warning that the empty ones were at some time to be moved, and that they might as well be moved at this time as at another. But for the fact that plaintiff was under one of them, no better time could have been chosen, and of that fact defendant's servants had no notice. If it be conceded that they were guilty of negligent omissions in moving the engine without signals, we think it unquestionably true that his own contributing negligence was the chief cause of his misfortune. His contention amounts to this, that having thus, without reason and for his own pleasure, placed himself in one of the most dangerous positions he could have chosen, he yet had the right to exact of defendant and its servants the foresight and the clock-like precision of action necessary to discover and save him from the consequences of his own imprudence; a foresight and caution for his protection utterly wanting in his own conduct. Having thus thoughtlessly exposed himself to a danger from which he suffered and which he could easily have foreseen and avoided he is not in a position to say that he relied on the defendant's employes to discover his danger and protect him from it. (Central Ry. Co. v. Smith, 78 Ga., 694.) His case is not better than that of persons who negligently walk, sit or lie upon railway tracks. These often do not know nor have special reason to expect that trains will be passing while they are on the track, but of this they take the risk, the very nature of the place warning them of the dangers they incur. The fact that the cars were being used as they were for the purpose of hauling gravel to this place notified plaintiff of the probability of the empty ones being moved so as to cause a movement of the one under which he sat. In this respect his attitude is the same, in principle, as those instanced; and, in so far as he so placed himself as to limit the opportunities of himself and of defendant's servants to see his peril, it is worse.

Giving due consideration to the verdict and the judgments of the courts below we yet can not escape the conviction that the evidence conclusively establishes a case of contributory negligence which requires us, reluctant as we are to interfere on such a ground and regretting as we do the necessity, to reverse the judgment.

*Reversed and remanded.*