**LANCASTER et al. v. CROCKETT.**
(No. 10906.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 7, 1925. Rehearing Denied Feb. 14, 1925. Writ of Error Dismissed for Want of Jurisdiction March 24, 1925.)

Railroads ☞278(2)—Employee of third person unloading freight car held negligent.

One injured, while leaning against wheel of one of the box cars he was employed by third person to unload, which was moved by pushing back a string of box cars, held negligent, in absence of agreement of railroad not to disturb cars during unloading process.

Appeal from District Court, Eastland County; George L. Davenport, Judge.

Action by Ed Crockett against J. L. Lancaster, receiver, and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Shropshire & Bankhead, of Weatherford, for appellants.

Sayles & Sayles, of Eastland, for appellee.

BUCK, J. Ed Crockett, plaintiff below, sued the receivers of the Texas & Pacific Railway Company for damages, alleging that, while he was engaged as a laborer in unloading cars on defendants' track at Eastland, Tex., on or about July 22, 1922, defendants' servants and agents negligently and carelessly pushed or backed a string of cars on to the switch where the car was being unloaded, causing plaintiff to be caught in the trucks of said car and causing plaintiff severe and permanent injury as the result thereof, and his right arm was severed from his body. He alleged that the defendants and their servants knew of his presence and the danger at the place where he was injured a short time before said injuries were inflicted and in time to have avoided the same, and that they negligently failed to warn him of such danger, although plaintiff had no knowledge of such danger.

The defendants answered by general and special exceptions, and a general demurrer, and specially pleaded that, if the plaintiff was injured in the manner alleged by him, he was a trespasser on said premises and guilty of negligence in going on defendants' railway track and about and under a car in the manner and under the circumstances he did at the time and place he did, and, if it had not been for such contributory negligence on plaintiff's part, the injuries of which he complained would not have occurred. They further pleaded that plaintiff went under the car in question and sat or lay down on the track and was lying or sitting under the car in question and leaning against the trucks or boxing or wheels or other part of the running gear of said car, and that said act and conduct constituted contributory negligence. The defendants further alleged that the place where plaintiff placed himself immediately prior to the accident was an obvious place of danger, a place where he had no right to be, a place where he had no business to be, and, after being warned of the danger of such position, he remained sitting or lying upon said railway track, or part thereof, and against said wheel or boxing or truck or other part of the running gear of said car

═══

until the accident of which he complains happened.

The cause was trial before a jury on special issues, and the jury found, first, that the defendants were negligent in the operation of their engine and train by failing to warn plaintiff of the approach of said engine, cars, or train, which resulted in the injury complained of by plaintiff; second, that such negligence on the part of defendants and their agents was the direct and proximate cause of the injuries complained of by plaintiff; third, that $10,000 would reasonably compensate plaintiff for the injuries sustained by him; fourth, that the defendants and their agents and employees did not ring the bell and sound the whistle of their engine in operating the same on the main track and switches just prior to the accident complained of by plaintiff; fifth, that plaintiff was not guilty of negligence in placing himself in the position he was in at the time he sustained the injuries complained of, and that the negligence of plaintiff in placing himself in such position did not contribute to the injuries sustained by him. The court entered judgment for plaintiff in the sum of $10,000, and the defendants have appealed.

The main question to be decided in this appeal is as to whether as a matter of law plaintiff was guilty of contributory negligence. He testified that he was 23 years old, and at the time of the injury was working for Jew Roper, unloading a car of four-inch pipe or casing; that the car was spotted just north of the ice plant and west of the freight depot on a side track; that those engaged in unloading the car drove their wagons alongside of the car and used two four-inch pipes for skids from the top of the car down to the wagons, and then lifted the casings out of the car and rolled them down these skids; that he was injured while waiting for the return of the other man, or men, at noon time, and had sat down under the car, leaning against the wheel; that it was very hot, being in July; that while he was sitting there a passenger train passed, and he moved from the north side of the car to the south side until the passenger train had passed; that he later went back to the north side; that while he was sitting in this position Mr. De Lane and Mr. Swearingen and Mr. Fuller, employees of the defendant railway company, passed within a few feet of him, and Mr. Fuller said, "It's a mightly warm day, isn't it," and he replied, "Yes," or something like that; that when the car was hit and moved it appeared that the engine or train that moved it came from the west, that he heard no noise, such as the blowing of a whistle or the ringing of a bell to warn him of any approaching engine or train; that no one called to him; that when the car was hit he tried to jump from under it, but it caught him and jerked him back, something caught him in the back, and the wheel caught his arm and dragged him down the track, and his arm was finally caught and cut off; that there was no railroad man or switchman around this car when he got hurt.

H. E. De Lane testified that he was local agent for the Texas & Pacific Railway Company at Eastland, and was at the passenger station on July 22, 1922, at the time of this accident; that shortly before the accident he and Mr. Swearingen, on their way from dinner, passed along near to where the defendant was subsequently injured; that the passenger train passed him and Mr. Swearingen at the Magnolia crossing at about 12:40 or 12.45; that he did not see the plaintiff on that occasion; that he knew where the car of pipe was located which plaintiff was assisting to unload; that it was on No. 3 track, the team track; that the closest the passenger train runs to this track is nine feet; that after the passenger train left the switch engine started out on the passenger track west to do some switching, and that it passed within nine feet of the car under which plaintiff was sitting; that when the switch engine went to the west end of the yards it had only a water car attached to it; that he supposed it was about eighteen car lengths west of the freight depot where this accident occurred; that he did not know how many cuts there were in these cars, but he knew there was one cut at the crossing, because they passed through that; that it was Mr. Swearingen's duty to clear the yard in the morning, and he made out a report of the cars on hand, and made up a switch list for the engineer to work by; that the company did not have any superintendent at that time, and Swearingen gave the engineer the switch list, and the switching crew went out and did the switching any time they desired; that the switching was done by the local freight engine and not by a yard switch engine; that Fuller was a warehouse trucker at that time, and worked under the supervision of the warehouse foreman, trucking freight or whatever the warehouse foreman told him to do.

C. D. Swearingen testified that at the time of the trial he was agent for the Eastland, Wichita Falls & Gulf Railway Company, but that on the date of the accident he was employed as demurrage and yard clerk of the Texas & Pacific Railway Company; that as a part of his duties he had complete charge of the freight yards between the yard limit bounds; that on the date of the accident and about 1 o'clock p. m. he walked through the west yards, coming east from what is known as the Magnolia crossing; that H. E. De Lane was with him at that time; that it was a warm day, and he saw a man sitting against the trucks under a box car smoking a cigar; that he walked within eight feet and to the left of this man; that he knew that the position occupied by this man was dangerous, but that he did not warn him of

such danger; that the reason he did not warn him was because at that time he was not policing the yards, and that apparently the man was not a trespasser at that time, according to his idea of the affair; that he did not say anything to him at that time nor did Mr. Swearingen.

W. P. Fuller testified in part that he was a demurrage clerk for the Texas & Pacific Railway Company, and was checking clerk at the time of the accident; that he did not know the plaintiff at that time, but that he saw him sitting under the west end on the north side of the west trucks of a car; that he just passed along and spoke to plaintiff as he looked up, and merely made a remark about it being a nice cool place, that it was awfully warm, and plaintiff said, "Yes," and then witness said that was a dangerous place to be in where plaintiff was and plaintiff answered, "Yes"; that as he walked along he noticed a car of pipe among a string of cars, but did not remember that he saw skids running from this car of pipe or not, but that he did see two wagons out from the car.

A number of witnesses were introduced by the defendants, consisting mostly of conductors, engineers, firemen, and brakemen, and the substance of their testimony is that the engine to the west-bound freight train went west from the depot to the west end of the yards, and passed within eight or ten feet of where the plaintiff was supposed to be sitting a short time before the accident; that the bells were ringing and the regular road grade crossing whistle was sounded; that after they got up to the west end of the yards they headed in on what was called the team track. They went towards the oil house to spot a car, and then went back and headed in on the team track, which is the one nearest to the main line, the one on which the accident occurred; that there were eight or ten cars on this track, and that in coming in on the track the regular grade road whistle was given and the bell kept ringing; that neither the engineer nor the foreman or anybody connected with this engine doing the switching had any notice or warning that plaintiff or any one else was under one of these cars on the team track, and in a place of danger.

J. L. Woods, the engineer of the train doing the switching at the time of the injury to the plaintiff, testified that the engine passed along within a few feet of where plaintiff was supposed to be sitting, but that he did not see him; that plaintiff could have been there, but witness would not have noticed him, because witness was not looking in that direction; that, if witness was looking up the track and a man was sitting down under the edge of one of the cars on an adjacent track, it would depend on the way the engineer was looking as to whether or not he would see him; that he could have

seen him very nearly a quarter of a mile if plaintiff had been standing up.

In T. & N. O. Ry. Co. v. McDonald, 99 Tex. 207, 88 S. W. 201, the Supreme Court had before it a case very similar to the instant case. Plaintiff testified that he had known of no engine coming in on the spur where he was unloading the cars in the daytime; that he did not expect that the standing cars would be disturbed during the hour intended for dinner. When the signal for dinner was given those engaged in the unloading work sought various places near the car to rest, and plaintiff and two others sat down under one of the unloaded cars, plaintiff sitting on the end of a cross-tie outside of but near the rail, and in front of the brake beam, facing east, with the edge of the car extending over him. While he was thus seated, employees of defendant came upon the spur track with an engine to take out the empty cars, and plaintiff was hit by the brake beam or shoe under which he was sitting. The Supreme Court said:

"That the act of sitting upon a railroad track over which cars are expected to pass is a negligent one, which precludes a person guilty of it, when hurt, from complaining of mere negligence on the part of those operating the cars in failing to discover his presence and avoid injuring him, is well settled. 2 Thompson, Com. Neg., § 1789, and cases cited. Of what character was plaintiff's act in not only sitting on the track but in sitting immediately under a car where his view of the movements of the defendant's servants, and their view of him were greatly, if not wholly, obstructed, unless it is excused by his claim that he did not know or expect that the cars would be moved. What assurance had he of this? He had none, according to any view that can be taken of the evidence. That for defendant is to the effect that the switching of the cars was done in strict accordance with the understanding and the previous practice. This, however, may be treated as disproved by the evidence for plaintiff. The facts stated by the witness for plaintiff from which the inference is drawn that the taking out and putting in of cars had, for a few days prior to the accident, been done between the times when Shea's hands quit work in the evenings and resumed in the mornings do not go to the extent of showing that there had been any understanding that the business should be managed in this way, or that this practice should continue and be uniform. They gave no assurance that the defendant would not take out empty cars at any other time when it could do so consistently with the work being done for Shea.

"When we come to plaintiff's own testimony we find that the only facts stated by him as a basis for his belief that the cars would not be disturbed are that these cars had been on this track and had not been moved during the time of his service there, and that no engine had come upon the spur. He claims, not that any particular time had been fixed for putting in and taking out cars, but that he judged they were not to be disturbed before they were unloaded. * * * His inference that loaded cars

would not be taken out was a just one, but the two that had not been unloaded were so connected with others that were empty, that any attempt that might be made to take away the latter was likely to move the former, and that is what happened.

"We have asked what assurance he had that the cars would not be moved, because in our opinion nothing short of that would justify him in taking a position, merely from choice and for his own pleasure, where any movement of the car was almost sure to hurt him. In taking this position, he was not performing any duty or work, and had not even the excuse that it was the only convenient place where he would be in the shade. Without some definite assurance or understanding of the kind referred to, the only restriction upon the right of the defendant to move its cars was that to be implied from the fact that it was delivering them to be unloaded by Shea's men, and was permitting all uses of them and of the track and right of way which was proper in carrying on such business. This imposed upon it the duty of conducting its business with due regard to the safety of the men while engaged in carrying on this work, and, had plaintiff been hurt while so engaged, his case would have been different. He would then have been where he had the right to be and where defendant must have anticipated he would be; and it may be that defendant would have had no right to disturb the cars without knowing his situation and he could have relied on the observance of its duty. But, as he was not thus employed, no such restriction existed upon the right of the defendant to control its own business, and in doing so it was under no obligation to the plaintiff that it did not owe to people generally who might be about the track and cars. Hence he had no right to assume that it would know that he might be situated as he was and would find him out."

The Supreme Court in the cited case reversed the judgment and remanded the cause to the trial court.

The case of Roper v. Texas Central Ry. Co. 55 Tex. Civ. App. 620, 119 S. W. 696, writ refused, shows that the plaintiff, aged about 16 years, was traveling with a circus being hauled over the defendant road. When the train reached the town of Stamford, where it was to give a performance, it was placed on a side track which was parallel to the main track, and about twelve feet distant. The circus used its own cars. After the night performance was over, about 11 p. m., Wilson went to the cars to take some ponies, and after placing them on the cars he took a seat on a cross-tie of the main track with his back turned thereto, and placed his hand on the rail of said main track, and was talking to other parties. While in that position a switch engine on the main track run over his hand and injured it. The bell of the engine was not ringing, no whistle was blown, nor was the headlight lit. It was dark, and Wilson's position was not seen by the employees on the engine. The trial court instructed a verdict for the defendant,

and the Court of Civil Appeals affirmed this judgment, saying that there was nothing in the evidence to relieve plaintiff from the consequence of his own negligence, citing a number of cases.

In the case of Smith v. I. & G. N. Ry. Co., 34 Tex. Civ. App. 209, 78 S. W. 556, writ of error refused, it was held that persons lying or sitting on railway tracks, whether awake or asleep, are guilty of the grossest character of contributory negligence, and, in the absence of any evidence of the discovery of their perilous position before they were struck by a train, the company is not liable.

In Kirby Lumber Co. v. Boyett (Tex. Civ. App.) 221 S. W. 669, dismissed by the Supreme Court for want of jurisdiction, the jury found that defendant was guilty of negligence in running and operating the engine which killed Boyett without having any headlight thereon, and such negligence on defendant's part was a proximate cause of Boyett's death, and that Boyett was not guilty of contributory negligence, and that just prior to the time Boyett was run over and killed by the engine he was lying down on defendant's track, and that Boyett, by the exercise of ordinary care, could not have avoided being run over by defendant's engine. The Court of Civil Appeals reversed a finding for the plaintiff, and rendered judgment in favor of the railroad. The court said:

"It may be, as found by the jury, that Mr. Boyett was not intoxicated at the time of his death, and it is unnecessary for us to determine whether such finding can be sustained; but we do conclude—in fact, we cannot escape the conclusion—that the only reasonable theory that could be advanced for his presence on appellant's track at the time of his death is that he was so far under the influence of liquor that he was not conscious of what he was doing when he lay down on appellant's track, or, if he was, that he did so, appreciating the danger to which he was exposed."

See G. C. & S. F. Ry. Co. v. Matthews, 32 Tex. Civ. App. 137, 73 S. W. 415, also found in 28 Tex. Civ. App. 92, 66 S. W. 588, 67 S. W. 788; 32 Tex. Civ. App. 137, 74 S. W. 803; (Tex. Civ. App.) 89 S. W. 983; 100 Tex. 63, 93 S. W. 1068, and certified question to the Supreme Court in 99 Tex. 160, 88 S. W. 192; St. L., S. F. & T. Ry. Co. v. West (Tex. Civ. App.) 174 S. W. 287, writ refused.

In Sears v. T. & N. O. Ry. Co. (Tex. Civ. App.) 247 S. W. 602, affirmed by Supreme Court, 266 S. W. 400, it was held that a locomotive engineer owes no duty to one asleep on or near the track to keep a lookout for him, so that there was no negligence in not discovering him in time to avoid striking him, though he was a brakeman of another train, not including that of said engineer.

There is no evidence in this case of any agreement between the defendant and those

(271 S.W.)

'engaged in unloading the cars that the defendant would not move the cars during the time of unloading. Mr. Roper, plaintiff's employer, testified, but said nothing as to any such agreement. In the absence of any such agreement, and in view of the testimony shown in the record with reference to how plaintiff was placed at the time of his injury, we do not believe that the judgment below can be affirmed. It is our conclusion that the testimony, including that of the plaintiff, shows that he was guilty of contributory negligence, precluding his right of recovery. An appellate court should be reluctant to disturb the findings of a jury on the facts, and we would not do so in the instant case if there was any evidence tending to show that the defendant was not guilty of contributory negligence as a matter of law. That he was injured seriously and partially incapacitated from doing any sort of manual labor, that he suffered a great deal as a result of his injury, we think is established beyond doubt, and, if it were not for this issue of contributory negligence in the case, we would be inclined to affirm the judgment below. We have considered whether it was not our duty, under the facts and inasmuch as the plaintiff had full opportunity to thoroughly develop the evidence in the trial, to reverse the judgment of the trial court and render judgment for the appellant. But, inasmuch as our Supreme Court has, in many cases where the facts seemed to justify, if not require, a reversal and rendition, reversed and remanded instead, and inasmuch as the record is silent as to any understanding between Roper and the defendant's employees that the cars on the track which were being unloaded should not be disturbed while the unloading was in process, and inasmuch as upon another trial such evidence may be available, we have concluded to reverse the judgment below and remand the cause to the trial court, and it is so ordered.