34472. HE-PO GAS INCORPORATED *v.* ROATH.

DECIDED MARCH 19, 1953.

828

*Edwin A. Carlisle, Bell & Baker,* for plaintiff in error.

*Cain & Smith,* contra.

FELTON, J. ■ The petition alleged the violation of a municipal speed ordinance. The allegation alleging such violation charged the defendant with negligence per se. *O'Dowd* v. *Newnham,* 13 *Ga. App.* 220, 221 (8) (80 S. E. 36); *Davis* v. *Hopkins,* 50 *Ga. App.* 654, 656 (3) (179 S. E. 213); *Folds* v. *City Council of Augusta,* 40 *Ga. App.* 827, 829 (4) (151 S. E. 685); *Central R. & Bkg. Co.* v. *Smith,* 78 *Ga.* 694 (1) (3 S. E. 397). The petition also alleged that the defendant failed to yield the right

of way to the plaintiff, failed to keep a proper lookout for her, and drove through the intersection at a speed much greater than that required by ordinary care, and that such negligence, coupled with the negligence in the violation of the ordinance proximately caused the injuries complained of. The petition alleged a good cause of action as against a general demurrer. *Streetman* v. *Bussey,* 25 *Ga. App.* 694 (104 S. E. 517).

■ The defendant in its answer alleged: "It is admitted that it was customary for a considerable number of such school children to use a special marked-off cross-walk at said intersection while crossing North Broad Street in going to and returning from said school . . but [defendant] denies that it [intersection] was constantly used by school children (regardless of the hour) in going to and from the said school." The defendant by answer admitted that its driver had used said intersection on a number of occasions and was acquainted with its location and general physical condition.

Alvin B. Wight testified in part as follows: "I remember the occasion, the accident took place between the truck and the little Roath child. I was headed north going toward the intersection there. The truck was coming from the other way, coming to Cairo from toward Bainbridge. I started home about five minutes to eight o'clock, I guess it was, and when I got close up there the light turned red and so I slowed down to about three or four miles per hour and rolled up to the stop light and when it turned green I started off in a second or so I heard this sound. The truck hit something down there. I saw this little girl when I drove up to this intersection. I don't know what position but she was up at the corner of that Gulf Station on the east side of Broad Street. I think she was standing there. That is the way I recall it. I heard a kind of thud just as I started to drive off. . . I noticed a blue truck of He-Po when it was approaching me when it came into the intersection. I would say it was traveling about thirty-five miles per hour. I would judge it was traveling about thirty-five miles per hour when it passed my car. . . I drove up to the light and the light was red and that gave the pedestrian the right to travel on North Broad Street. There was a car ahead of me. . . I crossed this pedestrian lane and the child was standing there. I did not see

her come back of my car. I was, of course, facing north and looking at the traffic light and expecting it to change. . . I would say I stopped fifteen or ten to twenty feet from the light where the road goes through from Thomasville to Bainbridge then right out there I would say I was ten or fifteen feet from the center of the road from right under the traffic light. I think there was a car ahead of me. I was not across the pedestrian lane. . . I was past it, north of it. . . If the light facing me that caused me to stop was red, the light on his side was green, and I would say he came in on the green light and turned into Broad Street on the green light. I would say he was traveling thirty-five miles per hour. . . I think the truck stopped about twenty feet further down from my car. I believe he started skidding his brakes right by the side of my car. I heard the truck tires skid right beside me. He started skidding his tires right side of my car or further south. I don't recall that he started before he got to me. . . I judge my car passed that pedestrian lane about fifteen or twenty feet. I would say the back end of my car was well past the pedestrian lane."

H. L. Lunsford testified in part as follows: "I am Deputy Sheriff of Grady County. I was Deputy Sheriff last October. I went to the intersection on North Broad Street when an accident happened injuring the little Roath girl. . . I found skid marks made by the truck and they appear in the picture. . . The skid marks led up to the back wheels of the truck and stopped. The right side of the truck was off the pavement. The skid marks were just west of the yellow line, the northwest cross-mark line, the one next to the traffic light. The distance from where the skid marks begin to the rear of the truck was thirty-one feet."

J. B. VanLandingham testified in part as follows: "I have been Chief of Police of Cairo for six years. . . I am familiar with the cross-walk leading from the west side of North Broad Street at the intersection leading from the east side to the west side. There was a cross-walk there when the accident took place in October. . . The lane was the one generally used by the children during the normal time they were coming and going to school. . . The majority of the children pass there from eight-fifteen to eight-forty when school takes in."

Russell Shiver, the defendant's driver, testified in part as follows: "I was then going south on the highway at approximately twelve to fifteen miles per hour when I reached the intersection. The light was in my favor, which was green, and I proceeded coming south out of the intersection and on to North Broad Street and immediately to my left Mr. Alvin Wight's car was sitting on the north lane. I did not see any child at all. No one was in view when I got practically behind Mr. Wight's car, I was looking to my left and I still could not see anything and all at once the kid came running from behind the car and was approximately six feet from my truck when I saw her. I immediately cut my truck to the right completely off the highway and she ran into the left front fender of the truck. . . Mr. Alvin Wight was headed north and I was headed south. I got to where I could see practically into his car when I saw the kid coming out from behind the car. She was running full speed. I had been looking to the left which is to the east. I saw her when she came from behind his car. I could not have seen her sooner. . . I have worked with He-Po about two months. My duties call for me to drive the truck. I drove it about town and different parts of Cairo. I had occasion several times to go in and out of that intersection. . . I was just floating along with my truck in gear as I approached Alvin's car. The bumper of his car was approximately at the north side of the pedestrian lane. The front end of my truck was about the pedestrian lane when I saw the child running out. She was running in a southwesterly course. She was not in the lane. When she hit the truck she was approximately three or four feet south of the lane. I presume she was in the front lane when I first saw her. I was approximately three or four feet from her when I first saw her. . . I did look over on the corner to see if any children were over there. I could not see any. Alvin Wight had me blocked, another car to his right had the highway blocked. I continued on at the rate of twelve to fifteen miles per hour. I realized that if any children were walking in that cross-walk, I wasn't able to see them till I got to the back of Alvin Wight's car."

"The driver of an automobile is bound to use reasonable care and to anticipate that persons along a public street or highway

and other persons having equal rights with him may be there. The driver has no right to assume that the road ahead of him is clear, but he must keep a vigilant lookout ahead for pedestrians in traffic." *Claxton* v. *Hooks*, 68 *Ga. App.* 383, 385 (23 S. E. 2d, 101); *O'Dowd* v. *Newnham*, 13 *Ga. App.* 220 (1, 2), supra; *Jackson* v. *Crimer*, 69 *Ga. App.* 18, 23 (3) (24 S. E. 2d, 603). The evidence authorized the jury to find that the defendant's driver was familiar with the intersection and the general conditions existing there; that he drove through the intersection at a speed of thirty-five miles per hour; that such speed was unsafe under the circumstances; and that by the exercise of ordinary care he could have discovered the presence of the plaintiff and avoided injuring her, even though the plaintiff was using the intersection fifteen minutes before the time it was usually used by school children on their way to school. *Cohn* v. *Buhler*, 30 *Ga. App.* 14 (116 S. E. 864).

■ Special ground 2 of the amended motion complains that the court erred in charging the following: "The plaintiff can only recover, gentlemen of the jury, by proof that the defendant was negligent in the manner or in some one of the manners as alleged in the petition. The duty to exercise ordinary care is, as the court has told you, on both parties in this case. Was the defendant negligent to the extent of failure to exercise ordinary care in the way alleged in the petition? If the defendant was not so negligent, then there would be no recovery. If the defendant was so negligent and such negligence was the proximate cause of the injury, then the plaintiff could recover . . if by the exercise of ordinary care she could not have avoided the consequence of the defendant's negligence, if you should find that the defendant was negligent as alleged." The complaint is that "said charge by its express and pointed language in effect instructed the jury that the plaintiff could recover by proving that the defendant was negligent in the manner or in some one of the manners as alleged in the petition without finding that such alleged manner or manners was negligence." The complaint is without merit. A finding that "the defendant was negligent in the manner or in some one of the manners as alleged in the petition" presupposes that such manner constituted negligence. A person cannot be "negligent" without committing

an act of negligence. The charge did not authorize the jury to find that the defendant's driver was negligent per se in violating the speed ordinance.

■ Special ground 3 complains that the court erred in charging: "I want to direct your attention particularly to an allegation in the original petition and the amendment to paragraph six—by a duly passed ordinance motor vehicles at said intersection was required to not exceed fifteen miles per hour, and then an amendment to that. The plaintiff set out a copy of that ordinance. I charge you as a matter of law, you will give no consideration to that ordinance for the reason the same is excluded from your consideration. That particular phase of the case you will not consider." The plaintiff in error contends that "the court, in charging the jury that they were to give no consideration to the copy of the ordinance set out in plaintiff's amendment to the original petition, without instructing the jury to disregard that portion of plaintiff's petition in which negligence was charged by a violation of said ordinance in operating said truck through said intersection in excess of fifteen miles per hour, left the jury misled, confused, erroneously and insufficiently instructed and in the position to determine that the defendant was negligent as alleged in the plaintiff's petition by operating said motor vehicle in violation of said ordinance and in excess of fifteen miles per hour although no such ordinance was in effect or existed." The contention is without merit. The effect of the charge was not only to remove from consideration by the jury the copy of the ordinance attached to the petition, but also to remove from their consideration all allegations in the amended petition relating to such ordinance. The charge removed the whole issue as to the ordinance from the jury's consideration.

■ Special ground 1 of the amended motion for a new trial complains that the court erred in refusing to give the following requested charge: "No person shall operate a motor vehicle upon any public street or highway at a speed greater than is reasonable and safe, having due regard to the width, grade, character, traffic and common use of such street or highway, or so as to endanger the life or limbs or property in any respect whatsoever; but said speed shall not exceed that tabulated below:

| Total Gross Combined Weight of Motor Vehicle and Load in Pounds | Speed in Miles per Hour Kind of Tires | | |
|---|---|---|---|
| | Metallic | Solid | Pneumatic |
| Less than 10,000 | 10 | 25 | 55 |
| 10,000 to 16,000 | 8 | 20 | 40 |
| Over 16,000 | 5 | 18 | 35 " |

The court did charge that portion of the request quoted above through the word "whatsoever," but did not charge the tabulated speeds. The refusal so to charge was not error. When the court in its charge eliminated the alleged city speed ordinance, no issue as to exact speed limits, set by law, was left in the case. The only issue involved as to the speed of the truck was what was reasonable and safe under the circumstances, and the charge was tantamont to a charge of the rule of ordinary care. *Strickland* v. *Whatley*, 142 *Ga.* 802 (1) (83 S. E. 856). There is another reason why the court did not err in refusing to give the requested charge. There was no evidence as to the "total gross combined weight" of the truck. This fact would have had to appear in the evidence to authorize the jury to determine what speed limit applied under the requested charge to the defendant's truck.

■ Special grounds 4 and 5 of the amended motion complain that the court erred in failing to charge the law applicable to the special plea or defense, and that the evidence raised an issue requiring a charge thereon. The special plea or defense in substance alleged that the plaintiff's injuries were the direct result of an unavoidable accident unmixed with the want of ordinary care by the defendant. In *Savannah Electric Co.* v. *Jackson*, 132 *Ga.* 559, 563 (4) (64 S. E. 680), it was held: "Where the judge instructs the jury that if the defendant has used all ordinary care and diligence there can be no recovery, it cannot be said to add a distinct and substantive defense to also prove that the plaintiff is free from fault. A charge that if the injury resulted from an accident, and neither party was at fault, there can be no recovery, is in the nature of an elaboration or additional statement of the proposition that the defendant is not liable if it is without fault. It may be proper to give such a charge, if requested, but being merely elaborative, it does not involve such a distinct defense as to make it error to fail to give it in

the absence of a request." It was held in *Alabama &c. Railroad Co.* v. *Brown,* 138 *Ga.* 328, 332 (6) (75 S. E. 330): "The failure of the court to charge the jury specifically what their finding should be in case they should determine from the evidence that the injury complained of resulted from an accident does not afford a ground for a new trial, in the absence of a written request to charge upon that subject." In the instant case, there was no request to charge on the subject, and the court did charge that there could be no recovery if the defendant was not negligent. Under the rulings in the above-stated cases, grounds 4 and 5 of the amended motion are without merit. See also *Allen* v. *Heys,* 204 *Ga.* 635, 637 (6) (51 S. E. 2d, 417); *Atlantic Coast Line R. Co.* v. *Thomas,* 83 *Ga. App.* 477, 490 (6) (64 S. E. 2d, 301).

The court did not err in overruling the general demurrer to the petition and in denying the amended motion for new trial.

*Judgments affirmed. Sutton, C. J., and Worrill, J., concur.*