James JACOBS, Susan Jacobs,
Plaintiffs-Appellants,

v.

DEATON, INC., Johnny W. Childress,
Defendants-Appellees.

No. 81–7062
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 28, 1981.
Rehearing Denied Oct. 5, 1981.

Ernest De Pascale, Jr., Athens, Ga., for plaintiffs-appellants.

Smith, Cohen, Ringel, Kohler & Martin, Warren C. Fortson, Bruce H. Beerman, Atlanta, Ga., for defendants-appellees.

Before TJOFLAT, VANCE and THOMAS A. CLARK, Circuit Judges.

VANCE, Circuit Judge:

This is an appeal from a judgment entered on a directed verdict for defendants in a diversity case arising out of a motor vehicle collision. Concluding that the case should have been submitted to the jury we reverse.

Shortly before midnight on September 29, 1977 plaintiff James Jacobs was the driver and his wife, plaintiff Susan Jacobs, a passenger in an automobile proceeding north on U.S. Highway 441 at the point where it crosses Interstate 20 near Madison, Georgia. Defendant Johnny Childress was operating a tractor trailer truck for his employer, defendant Deaton, Inc. He had driven the tractor trailer on the interstate, then had proceeded over an exit ramp and was making a left turn onto Highway 441 when the collision occurred. Both plaintiffs sustained severe personal injuries.

The only witnesses who testified concerning the accident were Mr. and Mrs. Jacobs, Mr. Childress and the Georgia State Trooper who arrived at the scene within a few minutes after the collision and conducted an investigation. At the conclusion of this evidence the district judge concluded that defendants were entitled to a directed verdict.

Application of the rule of *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) is well understood. In both the trial court and on appeal the standard is the same. On motions for directed verdict we must examine the evidence in light and with all reasonable inferences most favorable to the party opposing the motion. So viewed, if there is substantial evidence supporting their claims a directed verdict should have been denied. *Williams v. United Insurance Company of America*, 634 F.2d 813, 815 (5th Cir. 1981). Our task, therefore, is to examine the record to determine whether, viewed as required, the evidence supporting the plaintiffs' claims is of such quality and weight that reasonable and fair minded jurors in exercise of impartial judgment might reach different conclusions. *Palmer v. Fuqua*, 641 F.2d 1146, 1153 (5th Cir. 1981).

The evidence presented at trial established that the weather was bad; it was raining, visibility was poor. U.S. Highway 441 is a two lane asphalt highway twenty-three feet five inches in width. A bridge over Interstate 20 results in a rise at least fifteen or twenty feet higher than the point where the vehicles collided. The crest is 300 to 400 feet south of the point of the collision. The speed limit was fifty-five miles per hour.

The Jacobs' car was a current model in good mechanical condition. It approached the point of collision from over the bridge at a speed of forty-five to fifty miles per hour. The driver was looking straight ahead and driving in a normal manner. When the tractor trailer first came into his view, it was 150–175 feet from him. The trailer was completely across both lanes of the highway and extended off the right side. Neither the driver nor the passenger saw any lights on the tractor trailer. As soon as he saw the tractor trailer Jacobs applied his brakes but the brakes did not immediately take hold because of the wet pavement. The front of the car crashed into the front of the trailer's rear tandem wheels. The left turn movement of the tractor trailer continued and dragged the automobile around backward for a distance of twenty-two feet from the point of impact.

The trailer was a flat bed loaded with coil steel. Its loaded weight was approximately 70,000 pounds and its total length about fifty-one feet. Childress said that he came off the interstate highway onto the exit ramp, stopped at the stop sign fifty feet from Highway 441, pulled to the edge of that highway, looked right, left, right and left again, pulled out to go to the nearby truck stop and as he did the automobile came over the bridge and hit him. He also said that with his load it would have taken at least a minute to move from his starting place to the point where he was struck. During that time he said that he had shifted gears one time and that the maximum speed of his truck was nine, ten or twelve miles per hour. He stated that he first saw the automobile when it came over the crest about 400 feet away; at that time he was already out in the highway. He said that the collision occurred one or two seconds later.

The State of Georgia imposes on each motorist the common law duty of reasonable or ordinary care under the attend-

ant circumstances, *Garrett v. Royal Brothers Co.*, 225 Ga. 533, 170 S.E.2d 294; *Claxton v. Hooks*, 68 Ga.App. 383, 23 S.E.2d 101 (1943). It is generally the duty of the driver of a motor vehicle to anticipate the presence of other travelers on the highway. He has no right to assume that the road ahead is clear. *He–Po Gas, Inc. v. Roath*, 87 Ga. App. 827, 75 S.E.2d 451, 455–56 (1953). Georgia provides by statute,

> [E]very driver of a vehicle approaching a stop sign shall stop . . . at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection *or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection* or junction of roadways. (emphasis added).

Ga.Code Ann. § 68A–403(b). Cases under a prior Georgia statute, which we do not view as being materially different, make clear that the duty to stop at a stop sign is absolute. *Richardson v. Coker*, 78 Ga.App. 209, 50 S.E.2d 781 (1948). Once the driver stops at the stop sign, however, the opposing driver's right of way is not absolute but depends on the exercise of ordinary care under the circumstances. *Nipper v. Collins*, 90 Ga.App. 827, 84 S.E.2d 497 (1954). *See also Jones v. Parrott*, 111 Ga.App. 750, 143 S.E.2d 393 (1965). Georgia law also provides

> No person shall turn a vehicle at an intersection . . . or otherwise turn a vehicle from a direct course . . . unless and until such movement can be made with reasonable safety.

Ga.Code Ann. § 68A–604(a).

■ From the evidence a reasonable jury may well find that Mr. Jacobs was not guilty of any negligent conduct that contributed to his and his wife's injuries. Indeed, a reasonable jury may likewise find Mr. Childress free of fault. The testimony of the Jacobs, the physical facts and the internal inconsistencies in Childress' testimony, however, provide substantial evidence that would support several other findings.

Childress says that he saw the Jacobs' vehicle only one or two seconds before the collision. If this is correct the jury could have found that he did not notice the car until it was over half way down from the crest of the hill.

Although he claims to have started his thirty-five ton rig from a complete stop, Childress says he attained a speed of about ten miles per hour, yet he had traversed only about one truck length after entering Highway 441. If credited, this would support a finding that he either did not stop or stopped at some considerable distance back from the point at which the statute required that he stop.

Childress testified that he started off at least a minute or maybe two minutes before the collision. If true this would support a finding that either because of weight or otherwise he was undertaking to traverse the intersection in a manner hazardous to all northbound vehicular traffic. The mere fact that Georgia allows tractor trailers on its highways does not give them leave to undertake turning movements in such a way as to create a danger to all oncoming traffic.

If credited, the testimony of both Mr. and Mrs. Jacobs would support a finding that the tractor trailer was not burning lights visible to oncoming northbound traffic.

This list is not exhaustive. It merely serves to demonstrate that properly viewed by the trial court, the evidence was clearly sufficient to withstand a motion for directed verdict. The district court's contrary ruling necessitates reversal and remand for a new trial.

**REVERSED and REMANDED.**